### LUTHER FRENCH *vs.* PHILIP E. NEW.

Parties, after having by their bonds of submission to arbitration, required the award to be *in writing,* and subscribed by the arbitrators, may waive that requirement, by parol, and receive a *verbal award,* which will be binding on both.

Thus, where a submission required ·the award to be made in writing under the hands of the arbitrators, subscribed by them or any two of them, and attested by a subscribing witness, but before the arbitrators made any award, the parties said to them they had substituted other writings which they had drawn up and executed, under seal, in place of a formal award in writing, and that all they, the parties, wanted to know, was *how much* was awarded, and they could fix the amount, in the instrument, as they had agreed; and that they did not want the award in writing, but wished the arbitrators to award *verbally;* IT WAS HELD that the parties had waived that part of the condition of the submission bond which required the award to be in writing.

Such an agreement for a parol award operates as a new submission; and the parties are *estopped* from saying that the parol award, made in pursuance of their directions, is void.

The principle that he who prevents a thing being done, shall not avail himself of the non-performance he has occasioned, applies to such a case.

Where a submission was in writing, under seal, to hear the evidence in reference to a certain lease, "to the end that all matters in controversy in that behalf, between the parties, should be finally concluded," &c., and a subsequent agreement between the parties recited that they had agreed "to submit their matters in controversy" to arbitration; *Held* that it was the intention of the parties that the arbitrators should pass upon all matters in reference to the lease; whether all the rent had become due or not; so as to end all controversy between them which had arisen, or might arise, out of that instrument; and that consequently the award was not void although it embraced the rent not then due, and damages subsequently to accrue, under the lease.

French *v.* New.

*Held also,* that parol evidence that the rent yet to become due, and other claims, were taken into consideration by the arbitrators, was proper, for the purpose of showing whether the arbitrators took into consideration matters beyond the submission, or not.

Where there is a submission, by writing under seal, of all matters relating to a lease, to arbitration, and a subsequently executed parol agreement between the parties, consenting that the arbitrators may make a *verbal* award, an award by parol will discharge the lease.

Proof that, previous to a submission of matters respecting a lease, the rent due thereon &c., one of the arbitrators counseled with the defendant, and told him his rent was too high, will not show such corruption, partiality or gross misbehavior as would invalidate the award at law; and is therefore inadmissible.

Such evidence cannot be given by the arbitrator himself; on the ground that it would go to impeach his award.

Where a submission purported to be made pursuant to the provisions of the statute for determining controversies by arbitration, but it contained no clause agreeing that a judgment should be entered in a summary manner upon the award to be made; *Held* that this was not a submission under the statute. (1 *R. S.* 541.)

THIS was an action brought to recover of the defendant the last two installments of rent due upon a *lease under seal,* executed by the defendant to the plaintiff, commencing on the 1st day of April, 1849, and ending April 1, 1852. The plaintiff claimed to recover the amount of the rent and interest, and also damages, in consequence of the non-performance by the defendant of certain covenants in the lease. The execution of the lease, which was dated March 16, 1849, was admitted by the pleadings, and it was read in evidence on the trial at the Saratoga circuit, in Oct. 1854. The defendant set up in his answer, and proved on the trial, that after the first and before the second installment of rent became due, on the 27th day of March, 1852, the plaintiff on the one part, and the defendant George E. New on the other part, entered into arbitration bonds, dated on that day, which recited that a controversy existed between the parties, and that the arbitrators were " to hear the evidence, testimony and proofs (exclusive of any other witness) of the aforesaid parties, *in reference to a certain lease given on or about the 16th day of March,* 1849, *by Luther French to Philip E. New,*" and concluded as follows : " So as the award of the said arbitrators be made in writing, subscribed by them or any two of them,

and attested by a subscribing witness, ready to be delivered to the said parties on or before the 10th day of April, 1852." " To the end that all matters in controversy in that behalf *between the said parties* shall be finally concluded, pursuant to the provisions of the statute, for *determining controversies by arbitration.*" The defendant also gave in evidence two instruments in writing bearing even date with the arbitration bonds, but evidently executed after them, inasmuch as they recited the execution of said bonds of submission, except that Lyndes Emerson was named in said instruments as one of the arbitrators, instead of Levi Rowley  These instruments provided the mode and times of payment of the sum that should be awarded to the plaintiff, instead of leaving it to be fixed and regulated in the award, and only making it necessary for the arbitrators to award the sum which they should decide the defendant should pay to the plaintiff. The arbitrators did not make any award in writing. But it appeared in evidence that they all met and were sworn as arbitrators, in the latter part of March, 1852, and that the parties had a hearing before them. The lease was produced before them, and the matters were finally submitted to them on the 31st day of March, 1852. The parties made their statements, among which the plaintiff said he claimed for rent due on the lease, and the last year's rent ; also for clover seed, timothy seed, 8 acres of rye, a stack of oats, and wood delivered at the door. The defendant insisted that he paid too much rent for the farm. He also made claims, on his part. At the time they submitted and before the parties left the room to the arbitrators, the plaintiff told them to mix it up in any way to do justice to themselves. About the time the parties left the room, Green, one of the arbitrators, said he supposed the award must be in writing. The plaintiff said, " *You need not bring the award, or judgment, in, in writing.* We have a writing drawn up, and we merely want to know how much the award is, and we will fix the award on the instrument as we have agreed. All we want the arbitrators to do is to fix the amount, and declare it verbally." The defendant also said, at the same time, that the award need not be in writing. The arbitrators were then

left alone, and after they had agreed upon their award they notified the parties, who appeared before them, and the award, which was unanimous, was declared in their presence. The arbitrators awarded that the defendant should pay the plaintiff $260. And the plaintiff was to pay the arbitrators. He paid two of them immediately, and the third one afterwards. After the award was declared, the plaintiff said he would see his attorney, Mr. Hoag. The latter soon after came into the room, and drew up and served on the arbitrators a written revocation of the submission. The plaintiff offered to show by one of the arbitrators, that previous to the submission he, the arbitrator, had counseled with the defendant and told him his rent was too high. This was objected to by the defendant's counsel and rejected by the judge, and the plaintiff's counsel excepted. The defendant offered to prove that he had tendered full performance of the award, on his part, according to the terms of the agreement executed after the submission bonds. This testimony was objected to as immaterial, and excluded by the judge. The evidence being closed, the judge inquired of the counsel if there was any question of fact which either of them desired to submit, in case he should hold the award valid, and was answered there was not. The defendant's counsel then moved the court to nonsuit the plaintiff; which motion was granted, on the ground that the award was valid and was a bar to the action. The plaintiff's counsel excepted, and the court ordered that the case be heard in the first instance at general term. A motion was now made to set aside the nonsuit, and for a new trial.

*J. T. Carr* and *A. Pond*, for the plaintiff.

*Merrill & McKindley*, for the defendant.

*By the Court*, C. L. ALLEN, P. J. It is insisted on the part of the plaintiff, that in order to make a valid award, the arbitrators must pursue the authority contained in the submission, strictly, as to the form, manner and time of its execution. There is little doubt but that the parties could give to the

arbitrators such powers as they pleased, and that they (the arbitrators) were required to do as they were directed by the submission bond.    This, as a general principle, cannot be disputed. (*Allen* v. *Galpin*, 9 *Barb.* 246, 250.    11 *John.* 133.    6 *id.* 14. *Cowen & Hill's Notes*, 1030.)    The great question in the case is, could the parties, after having required the award to be in writing, waive that requirement by parol, and receive a verbal award which would be binding on *both*?    In the case of *Perkins* v. *Wing*, (10 *John.* 143,) the condition of the bond was that the award should be in writing ready to be delivered to the *parties*, or any of them requiring the same, on or before the first of September.    The arbitrators, before the day, made their award in writing, and read it over to the parties, who appeared to be satisfied, and one of them paid a part of the award, and did not then demand a duplicate, but on the day did demand a duplicate, or copy, which was refused.    In an action on the award, the plea was no award.    The court said, although the fact of demand and refusal should have been pleaded specially, yet if it had been properly in issue, the evidence was sufficient to show that the defendants had admitted a delivery or waived the necessity of any.    That when the award was read and declared, and the defendant promised to perform it, and did in fact perform it, that was a consummation of the business, and the defendants were concluded from alleging afterwards, that the award was not delivered according to the condition of the bond.    That they were bound to speak then, at the time of the publication, and when the arbitrators were upon the point of concluding and dispersing, if they required further notice, publication and delivery.    That no circumstances could be stronger from which to infer an acquiescence in that mode of delivery, and a *waiver* of the necessity of one more formal.    The case of *Sellick* v. *Adams*, (15 *John.* 197,) decided that where sworn copies of the award are delivered to the parties, by the arbitrators, *and received without objection*, this will be deemed a waiver of their right to receive the original award.    So it was held to be a waiver, if one of the parties should say to the arbitrators they need make no counterpart, as he would not receive it.    (*Buck* v. *Wadsworth*, 1

*Hill,* 321, citing with approbation *Sellick* v. *Adams.* And see *Howard* v. *Sexton,* 1 *Denio,* 440.) The case in 1 Hill was after the revised statutes regulating arbitrations, and yet it referred to and sanctioned the cases above cited from Johnson. It was probably the intention of the parties in this case that the arbitration should be under the statute. (2 *R. S.* 541, § 1, *et seq.*) This is pretty evident from the concluding clause in the submission bonds, providing that all matters in controversy between the parties should be finally concluded "*pursuant to the provisions of the statute* for determining controversies by arbitration." And yet there was no clause in the submission agreeing that a judgment should be entered in a summary manner upon the award to be made in pursuance of the submission, as is required by the section just quoted. This was held to be necessary by the court of errors, in the case of *Wells* v. *Lain,* (15 *Wend.* 99.) And the chancellor, in *Bloomer* v. *Sherman,* (5 *Paige,* 575, 578,) intimates that such was the opinion of the court in the former case, though he differed from a majority of the court, and decided, in the latter case, that the 23d section of the act, declaring that neither party shall have power to revoke the powers of the arbitrators, after the cause shall have been finally submitted to them by the parties, was applicable to all cases of submission to arbitration. *Cope* v. *Gilbert,* (4 *Denio,* 347,) sanctions this last construction. We must follow, however, the decision of the court of errors, and hold, with that court, that this was not a submission under the statute. It was however in writing, under seal, and required the award to be in writing, subscribed by the arbitrators or any two of them. And the question returns, could this requisition be waived, and the award be made *verbally,* as requested and directed by the parties? It does not seem to be disputed that a parol submission may be followed by a parol award, or that a submission under seal may provide that the award may be made in writing under the hand of the arbitrators, without seal. (*Kyd on Awards,* 116, 227, 291. 2 *Greenl.* § 69, *&c.* 2 *Hill,* 271, *and notes.*) Where the submission does not require a written award, a verbal award is good, at common law. (2 *Barb. Ch. Rep.* 430.)

The submission in the present case required the award to be made in writing under the hands of the arbitrators, subscribed by them or any two of them, and attested by a subscribing witness. But before the arbitrators awarded, the parties, and particularly the plaintiff, said to them they had substituted other writings, which they had drawn up and executed under seal, in place of a formal award in writing, and all they wanted to know was how much the arbitrators awarded, and they could fix the amount, in the instrument, as they had agreed; that .they did not wish the award in writing, but wished the arbitrators to award verbally. The instruments which they had thus executed and delivered to each other after the submission bond, after reciting the submission, promised and agreed how the amount awarded by the arbitrators to be due from the defendant to the plaintiff should be paid; leaving it only necessary for the arbitrators to report . the amount which they should find. They undoubtedly directed the arbitrators to award the sum found, verbally, lest a written award should, as it well might, interfere with their· last agreement. By those acts and directions I think they waived that part of the condition of the submission bond requiring the award to be in writing. (*See cases before cited, and* 2 *Barb.* 316; 3 *John.* 528; 2 *Cowen & Hill's Notes,* 1030, *and cases cited.*) In *Bloomer* v. *Sherman,* where the time for making the award had been extended, the chancellor remarked that under a submission by bond the time might be enlarged, by an agreement not under seal. And although in such case an action upon the bond itself could not be maintained, yet that the party injured by the breach of the agreement, or the non-performance of the award, must seek his remedy by a suit upon the submission implied in the new agreement taken in connection with the bond, or by an action upon the award made in pursuance of such submission. And such was the doctrine in *Freeman* v. *Adams,* (9 *John.* 115,) and *Armstrong* v. *Masten,* (11 *id.* 189.) See also 3 *T. R.* 542, *note ;* 2 *Wend.* 587; 8 *John.* 392 ; 4 *Cowen,* 566.) The case of *Fleming* v. *Gilbert,* (3 *John.* 528,) is a very strong one in favor of this doctrine of waiver, which the court

say must always rest in parol.    And I do not find that the decision in that case has ever been shaken, but it was recognized as good law in *The Mayor of New York* v. *Butler*, (1 *Barb. S. C. Rep.* 325,) and by the court in this district, in the case of *Esmond* v. *Van Benschoten*, (12 *Barb.* 366, 370.)

But it is argued by the plaintiff's counsel that if the transaction, modified as it was by the parties, should be held by the court to amount to a parol award, or a parol submission and award, and the remedy, if any, would be upon the new agreement, or an action upon the award founded upon it, yet, that in this case, the lease, being a specialty, could not be changed or modified by the parol submission and award.    The general principle for which the counsel contends is undoubtedly correct; as for instance, where by law the matter awarded is not arbitrable, or where from the subject of arbitration a writing is necessary to pass the right to the thing in demand, or to destroy the demand.  (2 *Cow. & Hill's Notes*, 1025. *Lagsdon* v. *Roberts*, 3 *Monroe*, 257.    *Kyd on Awards*, 52, 53.) But Mr. Kyd remarks that most of the cases which cannot thus be submitted of themselves, may, when joined with other things of an uncertain nature ; because there is then an uncertainty about the whole of the disputes ; as for instance, debt for arrears of rent ascertained by a lease for years.    And it is to be remarked here, that there is an evident distinction between maintaining an action on the bond, where there has been a parol modification of it, and setting up the award as a discharge from a strict compliance with the covenants in the lease. In relation to the title to land, it is well said that the decision of arbitrators cannot convey the title to land, but an award upon the title is binding upon the parties, and estops the plaintiff or defendant from disputing the title affirmed by the award. " An award, whether it relates to the title, the possession, or the location or boundaries of land, has not the operation of a conveyance, but the parties are concluded by their agreement from disputing the location or title as settled by the arbitrators. *Its operation is in the nature of an estoppel.*    The award in such case is not offered as evidence of title, but to prevent

either party from setting up a title which had been negotiated by the arbitrators." (2 *Cowen & Hill's Notes*, 1037. *Jackson* v. *Gager*, 5 *Cowen*, 383, 387. *Cox* v. *Jagger*, 2 *id.* 638. *Robertson* v. *McNiel*, 12 *Wend.* 578. *Mitchell* v. *Bush*, 7 *Cowen*, 185. *Davy's Ex'rs* v. *Faw*, 7 *Cranch*, 171, 176.)

It is insisted that the original submission having been in writing under seal, and the alleged waiver or agreement dispensing with a written award, having been made before any breach of the conditions of the submission bond, was a nullity, within the case of *Howard* v. *Cooper*, (1 *Hill*, 44.) I am aware that Judge Cowen in that case remarked that it was out of the power of both parties to alter the legal effect of the sealed submission or a sealed contract, without seal. In that case an item contained in the submission had been withdrawn from the consideration of the arbitrators, by the agreement of the parties, by parol, and was not passed upon by them; and yet the court held that it could not thus be withdrawn, and that the award was conclusive upon it. It may be said here, in the first place, that the waiver was not entirely by parol, but by new instruments in writing executed by the parties under seal; and secondly, that the point of estoppel was not presented, or passed upon by the court. In *Coleman* v. *Wade*, (2 *Seld.* 44,) the award was in writing not under seal, relative to the guaranty of payment of rent reserved by lease under seal, and it was argued that the claim was not merged in the submission bond and award. The court held otherwise, and decided that the award would operate as a bar to an action commenced on the lease, and the guarantors were discharged. It may be said, too, within the principle of *Allen* v. *Jaquish*, (21 *Wend.* 628,) cited in that case, that here was an agreement *executed between* the parties, by which the arbitrators were authorized and directed to make an *oral* award. Besides, the agreement for a parol award, as before remarked, operated as a new submission. (9 *John.* 37, *and other cases above cited.*) But on the ground of estoppel, alone, I am satisfied that the plaintiff is concluded from saying that the award is void. He ought not, and cannot, be permitted to deny his own acts. He induced the defendant to

consent, with himself, to direct the arbitrators to make a parol award. They particularly stated that they would make it in writing, as required by the bond. The plaintiff affirmed in the most explicit terms, that they (the parties) had drawn up and executed an agreement between themselves, by which all matters were regulated except the sum which the arbitrators were to award, and that all they wanted was an award by parol. And when the award is thus pronounced pursuant to his own directions, and the defendant seeks to abide by it, and in part performs it by a prompt payment of the fees of the arbitrators, the plaintiff, finding it not conformable to his views or wishes, seeks the aid of the court to permit him to take advantage of his own wrong, although such a proceeding is contrary to upright dealing and good morals. Such a proceeding, in my judgment, would be rank injustice, and decidedly in conflict with all the cases on this subject. The principle laid down in *Fleming* v. *Gilbert*, before cited, " *that he who prevents a thing being done, shall not avail himself of the non-performance he has occasioned,*" cannot be made more applicable than to the present case. (*And see* 8 *Ves.* 480 ; 3 *Hill*, 215 ; 2 *Seld.* 44, 279 ; 12 *Barb.* 370 ; 77 *Com. Law Rep.* 83.) It would in fact be allowing the plaintiff to perpetrate a fraud upon the arbitrators and upon the party.

The last objection which I shall notice is that the award was void as to the rent not due, and as to damages subsequently to accrue. It is said in support of this position, that a covenant cannot be discharged before breach but by an instrument under seal. And numerous authorities are cited by the plaintiff's counsel in support of this principle, and which cannot be disputed. The question is, whether they are applicable to the case which we are now considering. It must be borne in mind that the submission was in writing, under seal, " to hear the evidence, in reference to a certain lease given on or about the 16th day of March 1849, by Luther French to Philip E. New. To the end that all matters in controversy in that behalf between the said parties should be finally concluded," &c. The subsequent agreements E and F, also recite that the parties have " this

French *v.* New.

day" [the day of the date of the submission bonds] agreed to "*submit their matters in controversy*" to arbitration. It is to be remarked, too, that the award was to be made on or before the 10th of April, 1852, ten days after the expiration of the lease. Now what was the evident intention of the parties, by this broad and comprehensive clause? Clearly that the arbitrators should pass upon all matters in reference to the lease; whether all the rent had become due or not; so as to end all controversy between them which had arisen, or might arise, out of that instrument. They intended, no doubt, to put an end to the lease, and to have a final settlement in relation to it. They evidently so understood the submission, as they went into all matters, before the arbitrators, as well relating to the rent due, as that which was to become due. They also litigated respecting the fire wood, oats, clover seed, and the eight acres of rye which must have been sown previously and was then on the ground. They finished the hearing on the 31st of March, only the day before the last rent would become due, and submitted all their matters to the arbitrators on that day. It is not for a moment to be supposed that they did not intend to, and did not in fact include the whole subject matter in relation to the lease, at that time. It is said it was proved by parol that the rent to become due, and other claims, were taken into consideration. This was proper, to show whether the arbitrators took into consideration matters beyond the submission, or not. And it showed what the intention of the parties was in the written submission. (7 *Hill*, 329.  1 *Barb.* 325.  4 *Denio*, 194.  *And see Kyd on Awards*, 52, 53.)

But it is insisted that the parol award would not discharge the lease. This depends, again, upon the effect of the waiver, and upon the principle of estoppel, before discussed. If the submission included it, in all its terms, then if the award was good the lease was canceled and the plaintiff was driven to his remedy under the award. In *Delacroix* v. *Bulkley*, (13 *Wend.* 71, 75,) one of the cases relied upon by the plaintiff's counsel, Savage, Ch. J., in delivering the opinion of the court, remarks that the case of *Fleming* v. *Gilbert* proceeded upon the princi-

ple that the plaintiff *prevented* the defendant from performing his contract, and therefore should not take advantage of his failure ; but that in the case he was then considering nothing was done or said by the plaintiff to prevent the defendant from a literal compliance with his contract. He adds, " It will be seen that there has been no innovation upon established principles, and that the law remains, as it has always existed, that a sealed executory contract cannot be released or rescinded by a parol executory contract ; but that after breach of a sealed contract a right of action may be waived or released by a new parol contract in relation to the same subject matter, or by any valid parol executed contract." Here was an executed contract under seal, submitting all matters in relation to the lease, and a subsequently executed parol contract that the arbitrators might award as they did, before any attempt at revocation by parol. *Eddy* v. *Graves,* (23 *Wend.* 82,) and *Suydam* v. *Jones,* (10 *id.* 180,) do not, as I understand them, conflict with this principle.

Again, it is further argued that if the award could operate to extinguish the rent already due, it could not affect that subsequently to become due, and being void as to that, must be void in toto. It was not competent for the arbitrators to award upon claims not submitted to them. But it has been already shown that all matters in relation to the lease, as well the rent to become due as that already accrued, were included in the submission. The submission may be extended so as to include claims not yet due from the one to the other by previous contract, so as to carry out fully the intention of parties to settle all matters between them, as well those existing at the time as those which may arise afterwards. (*Kyd,* 142 *to* 149.)

The evident and clear intention of the party, as before remarked, was to extinguish the lease entirely. So the arbitrators understood, and awarded accordingly. And every reasonable intendment is to be made, to uphold their award. (19 *Wend.* 290. 1 *Seld.* 482.) The verbal award and the instruments E and F, may be construed together for the purpose of upholding it.

The evidence offered by the plaintiff was properly rejected. The offer did not go far enough. It did not go to show such

corruption, partiality or gross misbehavior as would invalidate the award at law. (1 *John. Ch. Rep.* 191, 276.   2 *id.* 551, *and various other cases.*)   Besides, in this case, the offer was to show, by one of the arbitrators, that he had previously conversed with the defendant and told him his rent was too high, &c. This, if any thing, was an attempt to impeach the award of the arbitrators by one of themselves.   This cannot be done. (*Van. Cortlandt* v. *Underhill,* 17 *John.* 405.   *Butler* v. *Mayor &c. of New York,* 1 *Barb. S. C. Rep.* 325.)

The motion to set aside the nonsuit and for a new trial, must be denied with costs.

[St. Lawrence General Term, September 3, 1855.   *Hand, C. L. Allen* and *James,* Justices.]