## CHARLES PIERCE *vs.* SAMUEL PIERCE.

Where one enters into possession of real estate under a verbal contract for the purchase of it, although the contract is void by the statute of frauds, yet after the purchaser has continued in possession for a year, an action will lie against him, for use and occupation.

The action for use and occupation will lie where the holding is upon an implied, as well as where it is under an express permission; and the tenant who goes in under an implied license is not to be permitted to dispute the title.

The action may be supported, although the agreement under which the party enters is invalid in part; and the agreement may be used to prove the measure of damages.

The plaintiff, being the owner of a farm, by a verbal agreement sold it to the defendant for $2000; provided, however, that if it could be sold for any more, within two years, the plaintiff was to have the benefit of the enhanced price; and if so sold, the defendant was to pay the interest of $2000 for the use of the farm each year. The defendant went into possession under this agreement, but no deed was given. He occupied the farm over a year, when the same was sold to M., with the plaintiff's assent, for $2500. *Held* that the defendant was liable to the plaintiff, for the use and occupation of the premises, at the rate of $140 per annum, until the sale to M.

And the defendant, on the sale of the premises to M. having reserved the use thereof, until the expiration of the year, and having communicated that fact to the plaintiff, and thereby induced him to consent to the sale, on the supposition that he was to receive rent for the whole year, in addition to the $2500 of purchase money; it was *further held*, that the defendant was liable to the plaintiff for the use of the farm from the time of the sale to M. until the end of the year.

Where there is a dispute between parties, as to the amount due from one to the other, and the creditor finally accepts a sum offered by the debtor, in full, he will be concluded by such acceptance.

Whether such acceptance of a payment is intended by the creditor to be in full of all claims against the debtor, or not, is a question of fact for the jury.

THIS action was tried at the Essex circuit, in March, 1856. The complaint contained two counts. The first set forth a special agreement that the defendant should have the use of a certain farm in Essex county, belonging to the plaintiff, until the plaintiff should sell and dispose of the same, and that the defendant should pay the plaintiff, for the use of the same, the sum of $140 per annum. The second was the common count for use and occupation.' The defendant answered, 1. Denying each and every allegation in the complaint; 2. Payment

in full of all indebtedness; 3. Payment on an account stated ; 4. A general counterclaim for moneys, work and labor, &c. There was a reply, denying each and every allegation in the answer.

On the trial, the plaintiff called, as a witness, *Harvey Pierce,* who testified that he was a brother of the parties; that he was acquainted with the farm formerly owned and occupied by the plaintiff. That the defendant went onto it in the spring of 1852, and occupied it over one year, and witness' impression was, two years. The defendant succeeded the plaintiff in the possession and occupancy of the farm. He knew the consideration under which the defendant went in. He was called upon to hear the verbal bargain between the parties. The defendant bought the farm conditionally for $2000, and if it could be sold for any more, within two years, the plaintiff was to have the benefit of it. If not, the defendant was to have it for the $2000. If it was sold, the defendant was to pay the interest of $2000 for the use of it. The plaintiff was to have all that could be got for it. It was worth $150 per year. The defendant told the witness he went into possession under that agreement. It was a verbal one. The counsel for the defendant moved to strike out the testimony, on the ground that the agreement was void, by the statute of frauds. The motion was denied by the court, and the defendant's counsel excepted. The witness, on cross-examination, further testified that the agreement was, that the defendant should pay $140 for the use of the farm, if he occupied a year, and if the farm was sold for more than $2000, the plaintiff was to have the benefit of it. The defendant was not to pay the $140 if he sold the farm immediately, or did not occupy it for one year. No deed was given. The defendant said the plaintiff had been injured in the indictment, and he did not want to make any thing out of him; that he was willing the plaintiff should have all that could be made out of it, and would as soon pay $140 a year as to buy it. That all the profits he expected would be the crops that he raised. The defendant's counsel here asked the witness in whom the title of the farm was, at

the time. To this question the plaintiff's counsel objected, and the objection was sustained, and the defendant's counsel excepted.

The plaintiff having rested, the defendant's counsel moved for a nonsuit, on the ground that the contract proved, between the parties, was by parol, for the sale of land, and was void. The court denied the motion, and the defendant's counsel excepted. The defendant then offered to prove that the plaintiff conveyed the farm to his brother Levi, in 1851; that at the time the defendant went into possession, a family arrangement was made, under which the defendant went into possession, as testified to by Harvey Pierce. That in August, 1852, the farm was sold to David Mitchell, for $2500, and it was conveyed by Levi Pierce, with the written consent of the plaintiff, to Mitchell. That the defendant paid the interest on the $2000 up to the day of sale, and after that time occupied under Mitchell; and that at the time of the conveyance a settlement was made between the plaintiff and the defendant, of every thing relating to the farm. The court decided to allow the evidence to be given, and the defendant's counsel introduced the record of a warranty deed from the plaintiff to Levi Pierce, dated August 25, 1851, and recorded September 6, 1851, by which the plaintiff conveyed the said farm to Levi, in fee. The deed contained no reservation, or declaration of trust. The defendant also gave in evidence the record of a warranty deed from said Levi Pierce to David Mitchell, dated August 18, 1852, and recorded September 16, 1852, in the clerk's office of Essex county. This deed was also an absolute conveyance. The defendant also gave in evidence a bond signed by the defendant and David Mitchell, dated Essex, August 5, 1852, reciting, "We the undersigned agree as follows: I, Samuel Pierce, hereby agree to furnish a good and sufficient warranty deed of the farm of land formerly owned by Charles Pierce, and now owned and occupied by me, consisting of 165¾ acres of land, be the same more or less, for the sum of $2500, to be paid upon the delivery of the deed, which shall be executed within fifteen days from date. I, David Mitchell, hereby agree to pay Samuel Pierce the sum of $2500

for the farm of land above described, when the deed is executed as above specified. In case of failure of either party, we bind ourselves, each unto the other, and hereby agree and fix upon the sum of $300 as the amount of liquidated damages to be paid to the other, by the party failing to fulfill this contract. In witness whereof, we have hereunto set our hands and seals, this date as above.     (Signed)    SAMUEL PIERCE.   [L. S.]
      In presence of                DAVID MITCHELL.  [L. S.]
          T. M. Mitchell."

The defendant also gave in evidence a writing signed by the plaintiff, in the words and figures following, to wit: "Levi Pierce, Sir, You can have my consent to deed the farm I deeded to you, to David Mitchell.   Westport, August 16, 1852.
          (Signed)                CHAS. PIERCE."

The defendant's counsel also proved by Harvey Pierce, that the $2500 purchase money was accounted for to the plaintiff, and more.   The defendant paid the plaintiff $32.67 on the 30th of August, 1852, and before that, he had paid the interest on a mortgage, amounting in all to $46.66.   This was applied on the interest of the $2000, or use of the farm up to that time. It was all that the defendant would pay.   The plaintiff claimed for the use of the farm for a year.   The plaintiff then proved by Harvey Pierce, under objection by the defendant's counsel, which was overruled by the court, and to which ruling the defendant's counsel excepted, that at an interview between the plaintiff, the defendant, and the witness, in April or May, 1852, it was agreed that the defendant and the witness should sell the farm, on the best terms they could.   On the last of July, or first of August, following, the defendant told the witness that he had contracted the farm to Mitchell, for $2500, and asked the witness to give his consent.   Witness inquired of him when he gave possession; the defendant replied, "I have it the year out; but if at any time Mitchell wants to come on, I am to give him up the house, and go to my own farm, and I am to give him a ton of hay, or hay enough to keep a cow, if he comes on."   The witness reckoned it up that the plaintiff would get $2650 for his farm.   About this time Mr. Anderson, their

brother-in-law, came up, and the bargain was stated to him, and he agreed to communicate it to the plaintiff. The witness drew the consent in writing which the defendant gave in evidence, and which the plaintiff afterwards signed. Mitchell did not move into the house that year, but the defendant occupied it, the residue of that year, and also the next year. *Samuel Anderson* testified to substantially the same facts. The defendant said, when he had related the bargain, "Have I done right?" and added, he was afraid Charles would not stand the bargain. In answer to a question, he said he could not tell whether he had bound himself to get a deed from Charles, or from Levi. The witness communicated the bargain to the plaintiff, as he was requested by the defendant and Harvey Pierce to do. One of the objections to this proof was that it could not entitle the plaintiff to recover under either count of his complaint. The court, in overruling the objection, granted leave to amend the pleadings, if necessary to make them conform to the proofs.

The plaintiff again rested, and the defendant again moved for a nonsuit, on the grounds before stated. The motion was overruled, and the defendant's counsel excepted. The defendant then proved by his son, *Josiah Pierce*, that in a conversation with the plaintiff, the last of August, 1852, the plaintiff said the defendant had paid him all the money the law would allow him, on the farm; still, as he had done so well on it, he thought he ought to pay him $100 more. That he had only received $48.66 for the use of the farm, and asked the witness to advise his father to pay him the rest. The plaintiff further said, in another conversation with the witness, on the 24th of February, 1855, that the defendant had better settle with him, or he would sue him to Malone, and Harvey Pierce and Anderson would swear him down. He said the defendant could afford to give him $100, he had done so well on the farm. The parties having rested, the defendant again moved for a nonsuit, on all the points before made by him. The court refused to nonsuit, and the defendant's counsel excepted. The defendant's counsel asked the court to charge the jury that there was no

Pierce v. Pierce.

evidence to sustain either count of the complaint, which the court refused to do, and the defendant excepted.

The court charged the jury that if they believed the evidence of Harvey Pierce and Samuel Anderson, the plaintiff was entitled to a verdict, for the balance of the $140, after deducting the amount paid, and the interest on the balance ; to which the defendant excepted. The jury found a verdict for the plaintiff for $111.98, on which judgment was entered, and the defendant appealed.

*H. H. Ross,* for the plaintiff.

*Pond & Hand* for the defendant.

*By the Court,* C. L. ALLEN, P. J.   There can be no doubt that a verbal contract, which relates entirely to the sale of an interest in land, is void by the statute of frauds.   This principle seems to have been conceded by the defendant's counsel, on the argument ; but the applicability of the doctrine to this particular case was denied.   It has been repeatedly decided that the action for use and occupation will lie where the holding is upon an implied, as well as under an express, permission ; and the defendant who goes in under such circumstances is not to be permitted to dispute the title. (*Osgood* v. *Dewey*, 13 *John.* 240.)   The agreement under which the party enters may be invalid in part, and yet this action may be supported, and the agreement used to prove the measure of damages.   In the case of *Little* v *Martin*, (3 *Wend.* 219,) it was decided that where there was a verbal agreement to demise a house for five years, and leases were afterwards to be executed, under which agreement the party entered, and he subsequently refused to execute the leases, the owner might maintain assumpsit for use and occupation.   It was remarked that the statute of frauds could not be objected, to a recovery, as the suit was not on the contract, and the plaintiff was not bound to sue upon it ; that the landlord might recover under the statute, where the agreement was not by deed ; that if the defendant went into posses-

sion by permission of the plaintiff, it was sufficient, whether he entered under a valid or a void contract. (2 *R. S. 4th ed.* 155. *And see* 1 *R. S.* 748, § 20, (26;) 6 *John.* 46; 13 *id.* 240; 7 *Wend.* 109.) The agreement here was followed by uninterrupted possession for a year; and though it was void by the statute, so far as the sale was concerned, the defendant was bound to pay for its use, as a tenant from year to year. (*Schuyler* v. *Leggett*, (2 *Cowen*, 660.) In that case the court said, that though a parol demise was void by the statute, yet it enured as a tenancy from year to year. (*And see The People* v. *Rickert*, 8 *Cowen*, 226; 8 *T. R.* 3; 5 *id.* 471.) If the purchaser retains possession after the contract is abandoned, he is liable for use and occupation. (*Dart on Vend. and Purch.* 120, 221, 222, 448.) The defendant in this case entered under the plaintiff, notwithstanding the plaintiff's deed to Levi Pierce, of August, 1851. He knew of that deed, or was bound to know of it, as it was recorded in September, 1851. The probability is the arrangement was a family one, for the benefit of the plaintiff, who seems to have been involved in some trouble, relating to a certain indictment, of which one of the witnesses speaks. He (the defendant) was to sell at the best price he could, within two years, and account to the plaintiff for the amount received on the sale, and to pay at the rate of $140 a year for the use of the premises until he should sell. He entered, therefore, in the spring of 1852, under and with the permission of the plaintiff, whatever may have been the legal effect of the agreement, so far as it related to the sale. He occupied until he sold to Mitchell, with the consent of the plaintiff. And he continued to occupy, after that sale, which took place in August, 1852, not only until the next spring, which would have been for one year, but also the next year. I think he was clearly liable to pay the plaintiff for the use and occupation until the sale to Mitchell, as he was then under the plaintiff. The question then arises, can the plaintiff be entitled to recover against the defendant after he parted with all title to the premises, and consented to have Levi Pierce convey them to Mitchell, in August, 1851. His consent bears date the 16th of August, and the

conveyance by Levi Pierce to Mitchell is dated 18th of August. There is no reservation of any right to possession, either in the consent or in the deed. The latter is an absolute warranty deed in fee, for the consideration expressed and proved, of $2500. In addition to this, it was proved that the whole consideration was paid to the plaintiff, and that $46.66 was paid to him on or about the 20th of August, 1852. This sum would be about the amount of interest on $2000 from the 1st of April previous, up to the time of the conveyance. There can be little doubt, therefore, that without any other proof, the plaintiff would not be entitled to recover any thing more. The deed to Mitchell, given by the plaintiff's consent, and also with the defendant's knowledge and approbation, would legally terminate all leases, trusts, rights of possession and licenses then existing, unless a right of possession was legally reserved. (6 *Barb.* 98. 8 *Paige,* 225. 16 *John.* 110. 1 *Wend.* 341, *&c.*) The plaintiff by his letter consented to an absolute conveyance of his land, and divested himself of all title, whether held in trust or otherwise. The legal effect of this would be to divest himself of all right to rent, or claim for use and occupation, after the conveyance. The relationship of landlord and tenant, if it before existed, would then be terminated. It is said the defendant would be estopped—having entered under the plaintiff—from denying his title. Such, undoubtedly, is the general doctrine. But can it be applied to a case where all parties, including both landlord and tenant, consent to an absolute conveyance of the premises to a third person, without any reservation? I think a party, under such circumstances, is not estopped. But the plaintiff seeks to get rid of the legal effect of this deed, by showing that there was a verbal reservation of the right of possession by the defendant, for the residue of the year; and this evidence, if it proves any thing, establishes such agreement *before* the deed to Mitchell was executed. The witness Harvey Pierce swears that the defendant told him and Anderson that he had agreed to sell the farm for $2500, and that he was to have the right of possession the year out. The bargain which he requested the witness Anderson to communicate to the plaintiff was that

he was "to sell to Mitchell for $2500, *and was to have it the year out.*" And Harvey Pierce swears that on reckoning it up he calculated that Charles was to get $2640 for his farm. He said the same thing to Anderson, who communicated the bargain to the plaintiff, and the consent in writing that Levi might convey, as drawn up by Harvey Pierce, was shortly after signed by the plaintiff; thus leaving *it to be pretty fairly in-ferred* that the plaintiff was induced to sign such consent in consequence of the information sent to him by the defendant, that he was to get the $2500 from Mitchell, and the $140 for the use of the farm, from the defendant, who in return was to receive, and from aught that appears from the evidence, did receive the profits for the year, at a cheap rate, as the annual value was shown to be at least $150. And it was proved that the defendant said he did not wish to make any thing out of the plaintiff; that all the profits he expected, would be the crops which he raised. That the plaintiff was to have all that could be got for it.

I think the testimony proving these facts was properly admitted. For although as between the defendant and Mitchell it would probably be inadmissible, yet as between these parties, it was not objectionable. As between the defendant and Mitchell, if the right to possession was not legally reserved in the deed, or by agreement after its execution, it might be the defendant's own fault or misfortune. But the agreement, which was for the benefit of the plaintiff, was that it should be reserved; and that agreement was communicated to the plaintiff, and would be calculated to have its due weight, in inducing him to consent to the conveyance. He had a right to presume, and probably did presume, as did the witness, that he was about to obtain $2640 for his farm, and thus consented to have it conveyed. He had a further right to presume that the defendant would legally reserve the right of possession for his (the plaintiff's) benefit. And if he did not do so, can he avail himself of his own neglect without the knowledge or consent of the plaintiff, and come in, when defending an action for the use and occupation, and

when he has probably received the avails of the crops, and had the whole use of the premises, and say to the plaintiff, "true when I reserved the use of the farm the year out, it was in fact a part of the consideration, and I so sent you word, when I requested you to consent to the conveyance, but I neglected to reserve my and your right of possession, in the deed, and no reservation was made afterwards. And you are therefore cut off from all claim for the use of your farm after the date of the deed to Mitchell." It appears to me that this would be allowing the defendant to take advantage of his own wrong, and that to prevent this, the doctrine of estoppel would apply, as intimated by this court in *Esmond* v. *Van Benschoten,* (12 *Barb.* 366;) and in *French* v. *New,* (20 *Barb.* 481, 487, 488;) and in *Stone* v. *Sprague,* (*Id.* 509, 515, 516;) and *Fleming* v. *Gilbert,* (3 *John.* 528.) The testimony was proper, as tending to show such a state of facts, and as proving that the premises were in the hands of Levi, and in possession of the defendant, as mere trustees of the plaintiff, and that they were holding for his benefit; and that the defendant did not pay rent to Mitchell for the first year, but did in fact reserve the use of the place to himself, for the benefit of the plaintiff; and that he was acting for the plaintiff. The objection that it went to explain, contradict or vary a written instrument, does not, therefore, in my judgment, apply. For these reasons the motion for a nonsuit was properly denied.

The remaining question for consideration is, whether all matters were settled, or not, between the parties, when the deed to Mitchell was executed; and whether the receipt, by the plaintiff, of the sum of $46.66, at that time, was an acceptance by the plaintiff in full of all claims against the defendant for the use of the farm.

The evidence is, that when the defendant paid the plaintiff the money, the plaintiff claimed rent for the use of the farm for a year, and the defendant refused to pay any more. If the plaintiff accepted this sum as in full, there being a dispute between the parties as to the amount due, he would be concluded

by it. (*Palmerton* v. *Huxford,* 4 *Denio,* 167.) The plaintiff, on receiving the $46.66, claimed for the whole year, which had not then expired and would not be then due. The defendant's son, it is true, testified that the plaintiff told him that the defendant had paid him at the time, all that the law would allow him, but he thought he ought to have more, as the defendant had done so well out of the farm. And in a further conversation, he said the plaintiff insisted that unless the defendant would pay him more, he would prosecute him to Malone, and Harvey Pierce and Anderson would swear him down. This was probably construed by the jury to mean that they would prove his claim, which the defendant was resisting, was a just one. It is to be presumed that the court properly charged the jury, and left it to them to say, whether there was a settlement between the parties, or not. No objection was made to the charge, on this point; nor does any request to charge them in relation to it appear in the case. The presumption therefore is, that no fault was found with the charge, in that particular. The only point excepted to, was that part of it where the court told the jury that if they believed the testimony of Harvey Pierce and Anderson the plaintiff was entitled to a verdict for the balance of the $140, after deducting the sum paid, (the $46.66.) I see no objection to that part of the charge. If the defendant had wished a more explicit charge in relation to the payment and alleged settlement, his counsel should have called the attention of the court to it, specifically.

On the whole, I can perceive no good reason for disturbing the judgment, in this case. If, as has been often remarked, the action for use and occupation is an *equitable action,* then the equities between these parties have been well preserved by the verdict. The defendant entered for the benefit of the plaintiff, and with the avowed object of aiding him in his misfortunes. He repeatedly declared he did not wish to make any thing out of him. He expected to have the crops which he raised, and was willing to pay, as long as he occupied, the cheap rent of $140 per annum. He engaged the premises for a year, and received

---

The People *v.* Sampson.

---

the avails, to his own use. He advised the plaintiff to consent to convey, under the impression that the year's rent of $140 was to be a part of the consideration; and there is no good reason why he should not pay the balance due, as found by the verdict.

The judgment must be affirmed.

[CLINTON GENERAL TERM, May 5, 1857. *C. L. Allen, James* and *Rose-krans,* Justices.]