BEARDSLEY and others *vs.* DAVIS, impleaded with Allen.

To constitute an agreement, it is not necessary that a proposition made by one party to another, by letter, should be accepted expressly. If it is acted upon, and complied with, that is a sufficient acceptance.

Thus where the defendants, factors and produce and commission merchants addressed a letter to the plaintiffs, who were maltsters, soliciting their business or a continuance of their business, stating their terms, and inviting consignments of malt, and the plaintiffs, without replying to the letter, or expressly accepting the proposition made therein, made several shipments of malt to the defendants; *Held* that this was an acceptance of the terms proposed; and that it was not material that the plaintiffs had previously done business with the defendants without any knowledge of their terms.

*Held, also,* that on receiving such letter from the defendants, stating that their charges for selling were five per cent, which covered all expenses, insurance, .

Beardsley *v.* Davis.

storage, &c. and a guaranty of the sales, the plaintiffs were at liberty to withdraw their business, or continue it, as they pleased; and that the making of further shipments by them, after that, was evidence that the terms were satisfactory, and that they were accepted.

*Held, further,* that these facts justified a finding by the referee that there was an agreement between the parties that the defendants should cause the property of the plaintiffs to be *insured.*

And that, to enable the referee to determine whether such agreement had been broken, it was proper for him to receive evidence as to the meaning of the word "insurance," as used by the defendants in their letter; that is, whether it meant a full or partial insurance; or what the custom of factors was, as to the extent of the insurance, when they effected insurance.

Where an agreement to insure is general, and there is no difficulty in procuring full insurance, and such is the general practice in the particular matter embraced in the contract, the fair and reasonable construction of the agreement is that the party undertakes to procure a contract for a full indemnity

In the absence of any evidence, aside from the general agreement *to insure,* the court, in fixing the *amount* of the insurance would not, *it seems,* stop short of a full insurance; unless it was shown that in the particular matter or business it is not the practice to fully insure.

The contract of insurance is one of indemnity; and the party whose property is destroyed will not obtain an indemnity unless he receives the full value of his property.

In an action against an agent, for negligence, in not procuring full insurance, the measure of damages is the value of the property destroyed; to be reduced by any amount received under a partial insurance.

Factors, who had agreed to insure property consigned to them, effected insurance to the amount of forty-one per cent, only, and the property being destroyed by fire, they wrote to the consignors conceding their liability to account for all they had received from the insurers, and placed the amount to the credit of the consignors, regretting it was not more, and hoping it would prove satisfactory. The consignors replied: "We supposed you were nearly insured in full; but if this is all we are entitled to, we must submit." And they drew a draft upon the factors for the amount received by them on account of insurance, which was paid. *Held* that there being no dispute between the parties about the facts, or about the claim, this did not amount to an *accord and satisfaction.*

APPEAL from a judgment entered upon the report and decision of a referee.

*J. McGuire,* for the appellants.

*Cromwell & Miller,* for the respondents.

Beardsley *v.* Davis.

*By the Court,* MARVIN, J. The plaintiffs were partners, doing business as maltsters in the city of Buffalo; and the defendants were partners doing business in Philadelphia, as factors and produce commission merchants. It is alleged in the complaint that the defendants, in January, 1866, solicited of the plaintiffs the shipment to them of malt for sale, &c. and undertook and promised the plaintiffs that whatever shipment of malt the plaintiffs should make to them, they, as such factors and produce commission merchants, would receive the same and store it and pay all expenses of handling, bagging and transferring, and would keep the same fully insured and pay the premium therefor, and sell the same for an aggregate commission of five per cent on sales; and the plaintiffs assented to such terms, and undertook and promised, on those terms, to make shipments to the defendants, &c. Allegations of divers shipments of malt, and the time, and quantity, and that the same were received by the defendants, some of which was put into the defendants' warehouse. Averment that it became and was the duty of the defendants, as such factors and commission merchants, in accordance with their undertaking and promise, to cause the said malt to be fully insured against loss or damage by fire, for the benefit and protection of the plaintiffs; that the defendants broke their promise and undertaking, and neglected that duty, and procured only partial insurance, to wit, the amount of 41 per cent on the malt. Averment that the malt was destroyed by fire. The plaintiffs claim damages.

The defendants, by their answer, denied the agreement, and the issue thus formed was the issue tried.

The position of the defendants is, that there is no evidence in the case authorizing the referee to find that the defendants agreed, in consideration of shipments of malt, or otherwise, to keep the plaintiffs' malt fully insured.

In other words, that this finding of the referee is unsupported by proof.

The evidence upon this issue is brief, and the question is, what does it prove? What construction had the referee a right to put upon the evidence?

It appeared from the oral evidence that the plaintiffs had shipped malt to the defendants as factors, the year before the transactions in questions, and for some years before to Allen & Harall, in Philadelphia. They had also shipped malt to factors, &c. in New York. January 19, 1866, the defendants wrote to the plaintiffs, acknowledging advices of a shipment of malt. In this letter, after speaking of their desire to please, and their business, they say : " Notice remarks about shipping to New York, &c. Our charges for selling malt, this season, is 5 per cent. This covers all expenses, ins. (insurance,) storage, labor, bags, &c. and also guarantees the sales. This gives general satisfaction to all our shippers. We believe this is the rate in New York." " We hope to give you good satisfaction, this season. We will do our best." The plaintiffs continued to ship malt, from time to time, to the defendants. The last shipments were October 19, and November 19, 1866. Portions of these shipments were destroyed by fire, December 19, 1866, with the warehouse of the defendants. They were insured to the extent of 41 per cent of the loss of produce held by them as factors. They paid the plaintiffs this 41 per cent, and the action is brought to recover the remaining value.

I have carefully examined and considered the elaborate and critical brief of the defendants' counsel, and I think the evidence justified the referee in finding a contract between the parties, by which the defendants were to procure insurance upon the property of the plaintiffs. It is argued that the proposition of the defendants, if it was to be so regarded, was never accepted by the plaintiffs, and so no contract resulted between them. It was not neces-

Beardsley *v.* Davis.

sary, in order to produce a contract between the parties, that the proposed terms should be accepted expressly. The defendants, by their letter of January 19, 1866, solicited the business of the plaintiffs, or a continuation of their business. This is the fair construction to be placed upon the letter. They say: " Be assured we will use our best endeavors to carry out your instructions to the letter, and hope we will be able to make results satisfactory. As we have better facilities for transacting the malt business, now, we will have less trouble in doing it," &c. They state their terms. After this the plaintiffs ship the malt in question. This was an acceptance of the terms proposed or stated. It is not material that the plaintiffs had previously done business with the defendants without any knowledge of their terms, or that the plaintiff, Beardsley, or the plaintiffs, supposed that a consignee was obliged to keep property insured. When the defendants communicated to the plaintiffs their terms; stating that their charges for selling were 5 per cent, and that this covered all expenses, insurance, storage, labor, bags, &c. and also guaranteed the sale, the plaintiffs were at liberty to withdraw their business, or continue it, as they pleased. The making of further shipments was evidence that the terms were satisfactory, and that they were accepted. I think the referee was right in finding that there was an agreement between the parties that the defendants should cause the property of the plaintiffs to be insured.

It remains to be considered whether this agreement was broken by the defendants. They were insured to the amount of 41 per cent. To enable the referee to pass upon this question, he received evidence as to the meaning of the word insurance, as used by the defendants in their letter; that is, whether it meant a full or partial insurance; or what the custom of factors was, as to the extent of the insurance, when they effected insurance. It seems

to me that this evidence was properly admitted, unless the question has been settled by adjudications. It is undoubtedly the province of the court to construe all written contracts, and the contract being ascertained, it is the duty of the court to harmonize the legal rights of the parties to it. But it so happens, sometimes, that the parties to contracts use terms or words, the meaning of them, owing to their peculiar calling, being entirely clear, and yet courts, for the want of the knowledge peculiar to those engaged in the business to which the terms, words or phrases relate, are unable to give the proper construction to the contract of the parties.

If the words or terms used relate to, or are controlled by a custom, and such a custom is not in conflict with the law, or the general tenor of the instrument, the custom may be proved, to enable the court to understand the contract. The custom must of course be reasonable, and not in conflict with law, &c. (*See Boorman* v. *Jenkins,* 12 *Wend.* 566; *Wilcox* v. *Wood,* 9 *id.* 346; *Cooper* v. *Kane*, 19 *id.* 386; *Hinton* v. *Locke,* 5 *Hill,* 437.)

In the present case what could the referee say? The agreement was to insure the property. The defendants did insure to the extent of 41 per cent. Did they perform their agreement? If so, then an insurance to the amount of 10 per cent, or less, would, perhaps, be held a performance of the agreement. Would such an insurance meet the contemplation—expectation—of the parties when they made the contract?

If the evidence is to be excluded, and the extent of the insurance is to be left to the court (assuming that the law has not fixed the amount,) the court will consider what was a *reasonable* amount to be insured. And what guide has the court, in fixing upon a reasonable amount? Shall the court say, although the property is to be insured, the amount shall not be a full indemnity? There are insurance companies that refuse to take risks for the full

value of the property. Suppose a party agrees to procure insurance in such a company, and he effects an insurance as large as the company will take; may he not show this in defense to an action for not procuring insurance to the full value of the property? I think so, and especially if it can be shown that the other party knew that the company named would only take a partial risk.

If, on the contrary, the agreement to insure was general and there was no difficulty in procuring full insurance, and such was the general practice in the particular matter referred to by the contract, would not the fair and reasonable construction of the agreement be that the party undertook to procure a contract for a full indemnity? I think so.

In the absence of any evidence, aside from the general agreement, as in this case, to insure, what amount of value would the court fix? It seems to me that the court would not stop short of a full insurance, unless it was shown that in the particular matter or business it was not the practice to fully insure.

The contract of insurance is one of indemnity, and the party whose property is destroyed will not obtain an indemnity unless he receives the full value of his property. The insurer against loss by fire may limit the amount of his risk.

I think that in this case the evidence touching the custom as to the extent of insurance effected by factors was quite unnecessary, and that it would have been error to reduce the recovery below the amount of the value of the property of the plaintiffs, in the absence of such evidence. The measure of the plaintiffs' damages was the value of the property destroyed, less the amount paid by the defendants.

The authorities I have consulted assume that the measure of damages for negligence of an agent to procure insurance is the full amount of the loss. (*Paley's Agency,*

*by Dunlap,* 18 *et seq. and notes. Story on Agency,* §§ 190, 218. *Russell on Fac. and Brok.* 26 *et seq. Smith* v. *Lascelles,* 2 *Term Rep.* 187. *Wallace* v. *Tellfair, Id.* 188, *note. DeTaslett* v. *Crousillat,* 1 *Wash. C. C. Rep.* 203. *DeForest* v. *The Fulton Fire Insurance Company,* 1 *Hall,* 84.)

On the 27th of February, 1867, the defendants wrote the plaintiffs that they had received from the insurance company the amount of insurance on merchandise destroyed by the fire; and regretted that they were not fully insured; that they were able to procure a fraction over forty-one per cent; and they sent therewith a statement of the malt of the plaintiffs destroyed, and of sales, and an account showing a balance in favor of the plaintiffs of $916.03. They stated that all the parties heard from were satisfied with the arrangement, and expressed a hope that it would prove satisfactory to the plaintiffs, as they were desirous of closing up the business as soon as possible; and would be pleased to hear from the plaintiffs by return mail. March 1, 1867, the plaintiffs answered: "We had supposed you were nearly insured in full; but if this is all we are entitled to, we must submit." "We have this day made our draft on you in favor of, &c. for $916.03, at sight." This draft was paid by the defendants. From these facts it is insisted that the parties settled the whole matter, or compromised; that what occurred between them was an accord and satisfaction. The answer of the defendant states the facts and sets up the defense. No notice of this defense is taken in the findings of fact, by the referee; nor has the counsel for the plaintiffs noticed the question in his points. The referee has found upon all the other facts very fully, and has stated the balance due to the plaintiffs; and as matter of law, he found that the plaintiffs were entitled to judgment for the sum of $881.33 and interest, &c. The defendant has excepted to this. Is the question fairly before us for review? Should not the referee have been requested to find the fact of

Beardsley *v.* Davis.

settlement—of compromise—or accord and satisfaction? The evidence is in the case; should not the referee have been called upon to say what it proved? If there is no dispute as to the facts, then a question of law arises. But if inferences are to be drawn from the evidence, then the referee or jury must draw them, and so find the fact. In this case I suppose we must assume that the referee found that the evidence did not prove a settlement of the claim, or an accord and satisfaction, constituting a defense to the action. And unless we can see that the evidence necessarily established a defense, we shall not be authorized to reverse the judgment, on this point; or, in other words, unless the evidence is such as to require us to differ with the referee, if he had found that there was no settlement of the claim, by the parties. The referee has in effect so found. Should the judgment be reversed upon the ground that the finding of the referee was against the evidence? As we have seen, the plaintiffs had a clear cause of action. The *onus* was upon the defendants to show that the cause of action was satisfied. Counsel cite *Stewart* v. *Ahrenfeldt*, (4 *Denio*, 189;) *Russell* v. *Cook*, (3 *Hill*, 504;) *Seaman* v. *Seaman*, (12 *Wend*. 381;) *Vosburgh* v. *Teator*, (32 *N. Y. Rep.* 561;) and as to accord and satisfaction, *Palmerton* v. *Huxford*, (4 *Denio*, 166;) *Pierce* v. *Pierce*, (25 *Barb*. 243.) The compromise or settlement of a doubtful claim, founded upon a valuable consideration, is undoubtedly binding upon the parties. A promise to pay money upon such a settlement is valid.

This principle has been applied to a disputed, indefinite or uncertain boundary line between the lands of adjoining proprietors. Such proprietors may by parol, or by arbitration, fix upon the line, and they will be estopped from disputing the line so fixed. (*Vosburgh* v. *Teator, supra.*)

In the present case what was there in doubt or dispute between the parties? The defendants conceded their liability to account for all that they received from the insu-

rers, and they placed the amount to the credit of the plaintiffs. They regretted it was not more, and hoped it would prove satisfactory. The plaintiffs say "we supposed you were nearly insured in full; but if this is all we are entitled to, we must submit." Here is no dispute about any claim, and no doubt expressed. The defendants in effect say, we owe so much, and have placed it to your credit; the plaintiffs say, we thought it was more, but if this is all we are entitled to, we must submit. There is no dispute between them, about the facts, or about the claim. The plaintiffs accept the amount conceded to be then due, and as to being satisfied, they say, we submit, if we are entitled to no more. The dispute relates to the claim subsequently made and litigated in this action. The claim made in this action may have been doubtful, and if so, the proper subject of a compromise. (*See Palmerton* v. *Huxford,* 4 *Denio,* 166; *Pierce* v. *Pierce,* 25 *Barb.* 243.)

What has been already said is a sufficient answer to the position that there was an accord and satisfaction.

Upon the whole I think the judgment should be affirmed.

[ERIE GENERAL TERM, November 16, 1868. *Daniels, Marvin* and *Barker,* Justices.]