## UNIVERSITY OF CHATTANOOGA, et al. v. ROY N. STANS-BERRY, Admr., et al.

Eastern Section. September 15, 1928.

Chas. Hays Brown and Atchley & Parker, of Knoxville, for appellant.

Fowler & Fowler, of Knoxville, for appellee.

PORTRUM, J. Nancy J. Coker, being a communicant of the Methodist Episcopal Church, undertook to aid its educational institutions, the University of Chattanooga, at Chattanooga, Tennessee, and the Tennessee Wesleyan College, at Athens, Tennessee, in a drive instituted by the church, known as the forward movement, to raise $850,000 for educational purposes. To accomplish this purpose, Mrs. Coker executed the following note, payable after her death:

"$850,000 University of Chattanooga forward movement $850,000.

"May 1, 1922.

"In consideration of my interest in Christian education and in consideration of others subscribing to the forward movement of the

University of Chattanooga toward an additional sum of eight hundred fifty thousand dollars for endowment, buildings, betterments and other obligations, I hereby subscribe and will pay to the University of Chattanooga the sum of One Thousand Dollars ($1000) on the following terms and conditions:

"1. This pledge shall be binding only when a total of seven hundred fifty thousand dollars shall have been subscribed on or before May 4, 1922.

"2. This subscription, when binding, shall be payable out of my estate sixty days after my death.

"3. This pledge, when binding, shall bear interest at the rate of — per cent per annum, payable semiannually from and after May 10, 1922.

"4. The special stipulations on the back of this pledge shall be considered by both parties to this contract as binding and of full force and effect as though written on the face of the obligation.

"5. Decision as to whether the conditions which make this pledge binding have been met shall rest with the Executive Committee of the University of Chattanooga and such decision shall be final.

"This pledge is to purchase a scholarship to be known as the M. P. & N. J. Coker scholarship.

"Witnesses M. M. Cable     M. P. & N. J. Coker
"Conference Holston
"District Knoxville     Name N. J. Coker
"Charge Lenoir City Cir.    Address Concord, No. 4
"Solicitor M. M. Cable Chas. C. Wilkins
"Adopted By Board of Trustees, January 25, 1922."

"I. That it is the sense of this body that three-eighths of the amount which will be expended for buildings shall be expended in Athens and five-eighths in Chattanooga.

"II. That in case at any date there should be a separation between the Athens school and the University of Chattanooga, all amounts subscribed and paid as a part of this forward movement, unless otherwise designated, in the Blue Ridge-Atlantic and the Holston conference, exclusive of Chattanooga and less the amount expended on buildings at Athens, should be considered as permanent endowment for the Athens school."

Mrs. Coker since the execution of the instrument has died, and the University of Chattanooga, a corporation, and the Tennessee Wesleyan College, a corporation, instituted a suit to collect on the foregoing obligation. The administrator of her estate, as well as her heirs, join in a contest of its validity, upon the ground that the instrument is a voluntary offer, based upon no consideration, which offer was at an end at the death of Nancy J. Coker. This forms the issue to be determined.

The rule is laid down in the case of Foust v. Board of Education, 76 Tenn., (8 Lea), 555:

"There can be no doubt, as said in the last of these cases, that there may be an acceptance of a voluntary donation and the accruing of a detriment to the promise sufficient to constitute a valuable consideration in law, by some unequivocal act, such as advancing or expending money, by erecting a building in accordance with the terms of a contract, and upon the faith of the donor's promise. It is obvious, however, that to bring the case within the rule, there must be a contract 'in accordance with the terms of which' the money is expended or act done. The injury must accrue upon entering into the contract and not arise from a breach of it:"

A consideration is defined in the Foust case as follows:

"A consideration can be either a benefit to the maker of the promise or a detriment to, or obligation upon the promise."

To quote from definitions found in foreign cases:

"The doctrine, however, may be regarded as well establish that, if money is promised to be paid upon a consideration that the promissee will do some act or perform certain services, then the latter upon performance of the condition, may compel payment. Nor need a request to the promissee to perform the services be expressed in the instrument; it may be implied. Hamilton College v. Stewart, 1 N. Y. 581; Barnes v. Perine, 12 N. Y., 18; Albany Presbyterian Church v. Cooper, 112 N. Y., 517, 20 N. E., 352, 8 Am. St. Rep., 567, 3 L. R. A., 468.

"In the latter case, Judge Andrews asserts the doctrine as laid down in earlier cases, that a naked promise to pay money, bare of any condition accepted by the promisee, to do something, will not be sustained; but he, very distinctly, recognizes the rule that where there is a request to the promisee to go on and render services, or to incur liabilities. on the faith of a subscription, which request is complied with, the subscription will be binding. It may be observed that the difference in the case last mentioned, and which prevented the maintenance of the action upon the defendant's subscription, was, as Judge Andrews stated, that there was 'no evidence, expressed or implied. on the face of the subscription paper, nor any evidence outside of it that the corporation, or, its trustees, did, or undertook to do. anything on the invitation or request of the subscriber.' " Keuka College v. Ray, 167, N. Y., 96, 60 N. E., 352.

In the case of Philomath College v. Hartlew, 6 Ore. 158, 25 Am. Rep. 510. it is stated as follows:

"While the courts rather than violate an old and established rule of law hold that a naked promise to pay money for a public object cannot be enforced for the want of a consideration, they have also decided, with great unanimity, that if the promise itself or any

other promise upon which it is founded, contains a request, or that which by any fair construction can be construed as a request, to the trustees, or others representing the institution for whose benefit the promise is made, to do any act, or to incur any expense, or to undergo any inconvenience, and such institution does the act, or incurs the expense, or submits to the inconvenience, this request and performance on behalf of the institution is a sufficient consideration to support the promise."

It appears, and there is no question made but what all the conditions contained in the promise have been fulfilled, with the possible exception that the scholarship in question has not been founded, but there is sufficient proof in the record to base a holding that the scholarship has been founded but not put in operation for the lack of funds. and is waiting the payment of this obligation.

One of the conditions was that the sum of $850,000 be raised and this, of necessity, required great exertion on the part of the institutions and the church which had the campaign in control. It appears among the donations that the Rockefeller Foundation contributed $166.666. and it is well known that this foundation gives only on the condition that the recipient raise a like fund, therefore to avoid these pledges would avoid the Rockefeller gift, which would be a great detriment to the institutions.

It is further shown that on the faith of these promises a large outlay of money has been expended in the erection of buildings and improving the campuses, as well as the increase in teachers' salaries. This outlay was expended upon the faith of the promises. It has been argued since this donation provided for a scholarship, these acts cannot be considered, but this is a strained construction. The instrument provides that upon condition these things are done, then $1.000 will be given for the construction of a scholarship, which was one of the things contemplated in the Fordward movement.

The scholarship pledge places no restrictions upon the expenditure of the fund. and the president of the University of Chattanooga says it is the custom and proper to use these funds in the construction of buildings or other improvements, and there is no breach or bad faith in so using the funds so long as the college maintains the scholarship. and in view of this statement, the scholarship pledge is not an isolated promise. but falls within the conditions set out in the pledge. raising money "for endowments, buildings, betterments and other obligations."

We are of the opinion the colleges have suffered a detriment in that they have laid out and spent money for the purposes above detailed and, therefore, there is a consideration for the promise.

The decree of the lower court sustaining the pledge is affirmed at the cost of the appellant.

Snodgrass and Thompson, JJ., concur.