## NATIONAL SURETY CO. v. AMERICAN FINANCE CO. OF GALVESTON.

No. 9565.

Court of Civil Appeals of Texas. Galveston.
July 8, 1931.

C. E. Leiden and Worsham, Rollins, Burford, Ryburn & Hincks, all of Dallas, for appellant.

Terry, Cavin & Mills and Lewis Jeffrey, all of Galveston, for appellee.

PLEASANTS, C. J.

Appellee brought this suit against appellant to recover 80 per cent. of the sum of $1,161 alleged to be due it by appellant upon a fidelity bond, designated on its face a "Wholesale Automobile Conversion Bond," issued by appellant to appellee. The petition alleges:

. That by the terms of this bond appellant agreed and bound itself to indemnify appellee against 80 per cent. of any direct loss "(a) Through the wrongful or fraudulent sale, mortgage, pledge, or conversion by a dealer named in the schedule forming part of this bond, of any motor vehicle so placed in the custody and/or possession of such dealer, or the possession of any warehouseman, for such dealer's account, under a title retaining instrument in which such motor vehicle is described, or through the wrongful or fraudulent conversion by such dealer of the proceeds of any sale of such motor vehicle made by such dealer for the account of the Obligee under the terms of such title retaining instrument."

That, in the schedule provided for in said bond and furnished plaintiff as effective on April 15, 1929, the Le Sage Motor Company of San Antonio was designated a dealer in automobiles whose fidelity was covered and guaranteed by said bond to the amount of $20,000.

"That prior to April 15, 1929, on said date and thereafter until November 12, 1929, Le Sage Motor Company, being a business conducted by J. H. Le Sage under the assumed name of Le Sage Motor Company, was engaged in a retail automobile sales business in San Antonio, Bexar County, Texas; that on April 15, 1929, and at all times subsequent thereto up to November 12, 1929, plaintiff was, by contract with said Le Sage Motor Company, placing with said Le Sage Motor Company and carrying in said Le Sage Motor Company's place of business, automobiles un-

der Trust Receipts which said automobiles, under the terms of the contract or trust receipt, said Le Sage Motor Company was authorized to sell in its retail trade and was required, under the terms of said contract of trust receipt, to make remittances in case forthwith to plaintiff upon the sale by it, the said Le Sage Motor Company, of any motor vehicle placed with said Le Sage Motor Company by plaintiff under said contract or trust receipt.

"That defendant was fully informed and advised of the terms, conditions, and provisions of said trust receipt or contract entered into between plaintiff and Le Sage Motor Company, and the bond herein sued upon, hereinabove more particularly described, was executed for the specific purpose and intent, among others, to indemnify plaintiff against any direct loss resulting from the failure of the said Le Sage Motor Company to remit to plaintiff any proceeds from the sale of automobile or automobiles covered by trust receipts which, under said trust receipts or contract, it was required to remit."

That on or about November 1, 1929, said Le Sage Motor Company wrongfully sold, mortgaged, and converted two automobiles belonging to plaintiff which were held by said motor company under trust receipts given by it to plaintiff which obligated and required said company to forthwith remit to plaintiff the proceeds of the sale of the automobiles so held by it for plaintiff. That the amount due plaintiff as the value of the automobiles so converted by the motor company was $1,200, but that said motor company has "failed and refused and still fails and refuses to remit to plaintiff the proceeds of the sale of said automobiles above described or any part thereof save and except the sum of Thirty-nine and No/100 Dollars ($39.00); that plaintiff has properly credited the sum of $39.00 upon said account, and there is now owing plaintiff by Le Sage Motor Company, the sum of Eleven Hundred Sixty-one and No/100 Dollars ($1161.00) from the proceeds of the sale of the automobiles hereinabove described, which said sum, said Le Sage Motor Company, although obligated to return to plaintiff, has wholly failed and refused to pay to plaintiff, but said Le Sage Motor Company has wrongfully and fraudulently converted to its own use and benefit the proceeds from the sale of said above described automobiles.

"That because of the wrongful or fraudulent conversion by the said Le Sage Motor Company and/or J. H. Le Sage, doing business as Le Sage Motor. Company, of the sum of Eleven Hundred Sixty-one and No/100 ($1161.00) Dollars owing plaintiff out of the proceeds of the sale of the above described two automobiles, or because of wrongful or fraudulent sale or conversion thereof, plaintiff has suffered a direct loss in the sum of Eleven Hundred Sixty-one and No/100 Dollars ($1161.00) and defendant has, by the execution of the bond hereinabove pleaded and described, obligated and bound itself to pay to plaintiff eighty (80%) per cent. of Eleven Hundred Sixty-one and No/100 Dollars ($1161.00) from which obligation a cause of action has arisen in favor of plaintiff against defendant to recover the sum of eighty (80%) per cent. of Eleven Hundred Sixty-one and No/100 Dollars ($1161.00), with interest thereon at the rate of six (6%) per cent per annum from November 1, 1929, until paid; that plaintiff has timely furnished notices and proof of loss to defendant."

The defendant answered by general demurrer and general denial and special pleas setting up the failure of plaintiff to comply with its obligations stipulated in the bond as conditions precedent to plaintiff's right of recovery on the bond.

One of these provisions of the bond is pleaded in defense of plaintiff's suit and is as follows:

"In condition 17 of said bond it is provided:

" 'If at any time after the effective date hereof, the Obligee or any of its officers, suspect or become aware of any act, fact or information affecting the moral or business standing of any dealer named in the schedule forming part of this bond, or such evidence as would warrant any prudent person in reducing or withdrawing credit or accommodation; or in case the Obligee in any other way receives information indicating a probable default hereunder or that any dealer named in such schedule is unreliable or unworthy of confidence; and should any such act, fact or information be not forthwith communicated to the Surety in writing, the surety shall not be liable for any act of any such dealer thereafter committed, nor for any motor vehicle not then delivered to such dealer.'

"In connection with this condition of the bond the defendant respectfully shows to the Court that the plaintiff or its officers had ground to suspect and did suspect and became aware of information affecting the business standing of the said dealer, and that such information as the plaintiff possessed would warrant and would require a prudent person to withdraw credit and accommodation, and the plaintiff received information indicating a probable default by the said dealer, and that such information was not forthwith communicated to the defendant in writing, and in fact was not communicated at all until after the dealer had become insolvent and gone out of business, and that the loss of which the plaintiff complains and for which it sues herein, if sustained at all, was sustained by the plaintiff long after it had acquired such information and failed to communicate same to this defendant, and therefore this defendant under the plain provisions

of the instrument sued on is not liable to the plaintiff, and plaintiff is not entitled to recover anything."

The defendant further pleaded an accord and satisfaction of the indebtedness due plaintiff by the motor company by its acceptance through its duly authorized agent and general manager, C. H. Pomeroy, of the sum of $39 in cash and negotiable paper of the value of $1,161.

The trial in the court below resulted in a judgment in favor of plaintiff for the sum of $928.80.

At the request of appellant the trial court filed conclusions of fact and law. The material fact findings of the court, all of which are amply sustained by the evidence, support the allegations of plaintiff's petition. These findings of fact upon the special pleas of defendant, above shown, are as follows:

"That on November 6, 1929, plaintiff had resident in the City of San Antonio one C. H. Pomeroy as its Branch Manager; that on November 6, 1929, and after the sale by LeSage Motor Company of the two automobiles herein above described, said LeSage Motor Company offered to plaintiff's Branch Manager in San Antonio, C. H. Pomeroy, six sets of promissory notes secured by chattel mortgages on cars executed by persons purchasing cars from LeSage Motor Company, and made payable to LeSage Motor Company, to plaintiff's said Branch Manager totalling $1161.00, together with the sum of Thirty-Nine and 00/100 ($39.00) Dollars in cash to balance the principal amount, to-wit, Twelve Hundred Dollars ($1200.00), due plaintiff by LeSage Motor Company under said Trust Receipt with the additional sum of Nine and 73/100 ($9.73) Dollars accrued interest, in full payment of said Trust Receipts; that said Pomeroy informed LeSage Motor Company at the time that he did not think the paper thus tendered would be acceptable to his principal but that he thought his principal would demand that the entire amount due under said Trust Receipts be paid in cash, but that if LeSage Motor Company desired he would transmit the proposal to his principal, the plaintiff, in Galveston for its acceptance or rejection; that this was agreed to by LeSage Motor Company who clearly understood and agreed that the commercial paper in question was being accepted by Mr. Pomeroy for transmittal to Galveston subject to acceptance or rejection by the home office; that said commercial paper was forwarded to Galveston by Mr. Pomeroy the same day he received it from LeSage Motor Company and on the same day such commercial paper was received in Galveston it was rejected by plaintiff and returned to Mr. Pomeroy with instruction to deliver same back to LeSage Motor Company, with the information that it was not acceptable and that plaintiff demanded the payment of the balance in cash. Plaintiff did accept and retain the cash payment of Thirty-nine and 00/100 ($39.00) Dollars, plus the cash payment of interest amounting to Nine and 73/100 ($9.73) Dollars and applied same to the credit of LeSage Motor Company on said Trust Receipt; that immediately on receipt of the return of the commercial paper in question by Mr. Pomeroy he delivered same to LeSage Motor Company with the advice that it was not acceptable to his principal, and he then demanded the balance due in cash, which demand was refused; shortly thereafter LeSage Motor Company went into bankruptcy and the commercial paper in question passed into the hands of the Trustee in bankruptcy.

"I find that plaintiff complied with all of the obligations and stipulations in the Bond aforesaid imposed upon it with reference to making audits and in giving notices to defendant, National Surety Company, with reference to default of LeSage Motor Company.

"I specifically find that at no time after the effective date of the Bond in question did the obligee therein, American Finance Company, or any of its officers, suspect or become aware of any act, fact or information affecting the moral or business standing of LeSage Motor Company, or receive or come in possession of such evidence as would warrant a prudent person in reducing or withdrawing credit or accommodation to LeSage Motor Company, nor did it in any other way receive information indicating a probable default by LeSage Motor Company under said bond or that LeSage Motor Company was unreliable or unworthy of confidence, prior to the 14th day of November, 1929, on which said date American Finance Company promptly telegraphed fully and explicitly its suspicion of the LeSage Motor Company to the defendant in accordance with the duty imposed upon it in the Bond aforesaid."

By the first proposition presented in its brief appellant contends that, when the Le Sage Motor Company tendered to appellee in settlement of its indebtedness the cash and negotiable paper shown in the pleadings and findings of fact, the appellee was bound to accept or reject the entire tender, and by retaining the cash it accepted the offered settlement and released the motor company from further liability upon the original indebtedness.

This contention is not sound. Appellee's claim against the motor company was liquidated, and there was no dispute between the parties as to the amount due thereon. The cash payment was admittedly due appellee by the motor company, and there was no agreement expressed or implied which would restrict appellee's right to retain this cash payment on the indebtedness and refuse to

accept the proposed negotiable paper for the balance due it by the motor company.

If appellee had agreed to accept the cash payment in satisfaction of the whole admittedly due indebtedness of the motor company, such agreement would be unenforceable for want of consideration. 1 R. C. L. page 184; 1 C. J. pages 539-541; 1 Tex. Jur. page 257.

It is true that in applying this general rule our courts have gone to the verge of reason in finding a consideration for such agreement, and it is now settled that any benefit to the creditor or detriment to the debtor will be considered a sufficient consideration to support the agreement; but manifestly such benefit or detriment must be something more than the receiving by the creditor and the payment by the debtor of a part of the indebtedness, for otherwise the general rule requiring a consideration for such agreement would be abrogated.

In this case, however, the fact findings of the trial court show there was no agreement on the part of appellee to accept the cash payment in satisfaction of the entire indebtedness, and under these findings the question of an accord and satisfaction is eliminated from the case.

The remaining propositions presented by appellant complain of the fact findings of the trial court before set out on the ground that such findings are not sustained.

We have considered each proposition and the evidence upon which the findings of the trial court are based, and we think the evidence is sufficient to sustain each of the findings upon which the judgment rests.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.