## DANIEL OIEN v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 4, 1936.

No. 30,972.

[1]Reported in 270 N. W. 1.

364

*Robert J. McDonald, John Edmund Burke,* and *William H. DeParcq,* for appellant.

*Doherty, Rumble & Butler, Clifford J. Menz,* and *Junell, Driscoll, Fletcher, Dorsey & Barker,* for respondent.

I. M. OLSEN, JUSTICE.

Plaintiff appeals from a judgment in favor of defendant adjudging that plaintiff take nothing by the action.

The case came on for trial in the district court of Ramsey county on October 29, 1935. After plaintiff's counsel had made his opening statements to the court and jury, defendant's counsel moved for a directed verdict on the pleadings and the opening statements so made. There was some discussion between the court and counsel, and statements and explanations as to what the opening statements of plaintiff's counsel were. The court thereupon directed the jury to return a verdict in favor of the defendant. Such verdict was returned and judgment thereafter entered thereon. The discussion had and the statements and explanations as to what was said by plaintiff's counsel in his opening statements were taken down by the court reporter and transcribed and are a part of the settled case.

The complaint alleges that plaintiff was employed by defendant from April 7, 1928, to April 25, 1933, at an agreed rate of pay per hour while at work; and that it was further agreed that, while he should be on the extra list during such employment, he would be guaranteed a minimum wage of $3.50 per day provided he would report for duty at all times when required to do so; that during his

said employment the defendant on numerous days failed to pay him said minimum wage of $3.50 per day; and that by reason thereof there is due and owing to him $550 for such wages.

The answer admits that plaintiff was employed by it during the time stated in the complaint; denies that there was any agreement to pay plaintiff a minimum wage of $3.50 per day while he was on the extra list; alleges that exhibit A, attached to the answer, is a correct copy of the application and agreement under which plaintiff was employed and sets forth the terms and conditions of his employment. Exhibit A reads as follows:

"In consideration of being employed by Minneapolis Street Railway Company, The Saint Paul City Railway Company, The Minneapolis and St. Paul Suburban Railroad Company, and The Minnetonka and White Bear Navigation Company, I agree to and with said Companies as follows:

"I agree to work under instructions on and during trial period at least 140 hours and such additional time in excess thereof as the above named Companies may consider necessary.

"I understand that the wages to be paid for the trial period will be 21 cents per hour for a maximum of 250 hours.

"I further understand that the wages to be received for the trial period are for actual platform time spent under charge of instructing trainmen, and that if appointed to the regular train service I am to receive the total compensation for the said trial period after having worked at least 40 hours.

"In consideration of the instruction received during any or all of the trial period above mentioned, I agree that if I leave the tentative employ of the Companies during said trial period, or if during or after conclusion of said trial period, the Companies do not see fit to regularly employ me, I shall receive no wages and shall have no claim against the Companies for my time and work during said trial period.

"I agree to deposit $2.00, covering the cost of property loaned to me at time of receiving my student appointment, this amount to be refunded to me after I have worked 40 hours in the regular train service, or have returned the above mentioned property.

"I further agree and understand that if I resign from the service of any of said Companies within one year after having been appointed to the regular train service, the wages paid me for the trial period are to be deducted from the wages due me at the termination of my employment, and that I shall have no claim against said Companies, or any of them for services rendered or expense incurred by me during said trial period.

"I further agree that my employment may be terminated by any of the above said Companies at its election at any time.

"I further agree that I will make no charge, claim or demand against said Companies for the time spent in reporting for duty at the request of said Companies or any foreman or agent thereof, or while waiting after so reporting before actually beginning work.

"I understand and agree that wages are to be paid to me only for such time as I am actually engaged in operating or running a car for said Companies or in actually doing such other work as may be assigned to me, by said Companies, computed at the following rates, change to the next higher rate to be made at the beginning of the pay roll immediately following the date when such promotion is due:

"1st year in service . . . . 50 cents per hour.

"2nd year in service . . . . 53 cents per hour.

"3rd year and thereafter . . 55 cents per hour.

"That these wages are satisfactory to me and if I am employed by any of the above mentioned Companies, I agree to work contentedly, study carefully, and comply faithfully with all their rules, regulations, orders and bulletins.

"I also agree to provide myself with the regulation uniform, in accordance with the rules and regulations of said Companies, within sixty (60) days after being appointed to the regular train service.

"I have been informed and understand that I am to be employed by Minneapolis Street Railway Company, The Saint Paul City Railway Company, The Minneapolis and St. Paul Suburban Railroad Company, and The Minnetonka and White Bear Navigation Company, and may be transferred from one to the other, and that

I am to receive compensation for the total services for the four companies through voucher or check from The Transit Supply Company, and in said employment I understand I am the co-employe with all other employes of the above named Companies, and assume all risks incident to the negligence of such co-employes. ·

"I understand and agree that, if it is found during my trial period or during the twelve months immediately following my appointment to the regular train service that I have made any false statement in this application, the Company shall have the right to discharge me and to deduct from any wages then due me the wages paid or to be paid me for the trial period.

"I HAVE READ AND CLEARLY UNDERSTAND THE FOREGOING, AND AM WILLING TO ABIDE BY EACH AND EVERY PROVISION OR PART THEREOF.

"Witness: Signed:

"George J. Petrach, DANIEL OIEN,
"Battle Lake, Minn.

"Date April 3, 1928.
"Recommended by . ............................"

The answer further alleges that on the 10th and 25th days of each month during the employment defendant paid to plaintiff the semi-monthly wages earned by him in the next preceding half month, at the hourly rate provided in the contract of hiring, and at times, as a gratuity, paid him certain bonuses in addition to his wages; that all payments were so made in accordance with the pay rolls, setting forth in detail the manner in which the amounts thereof were computed, and that such pay rolls were available to and open to the inspection of the plaintiff; that all payments were made by check, form of which is attached, and each of which checks contained a receipt in full for services for the half month therein specified; that plaintiff accepted, indorsed, and cashed each of said checks; that plaintiff is estopped by accepting such checks and indorsing same, with the receipts therein contained.

The relevant parts of the reply are: A general denial of the allegations of the answer except so far as it admits allegations of the complaint or allegations thereinafter admitted or qualified. The reply further alleges, in substance, that, if plaintiff executed the

application for employment, exhibit A attached to the answer, such agreement was only a part of the contract of employment. The reply then sets out an alleged communication from defendant, in the form of a letter (probably a printed form) in words and figures as follows:

"MINNEAPOLIS STREET RAILWAY COMPANY,
THE ST. PAUL CITY RAILWAY COMPANY,
THE MINNEAPOLIS & ST. PAUL SUBURBAN
RAILWAY COMPANY
and
THE MINNETONKA & WHITE BEAR NAVIGATION
COMPANY

"Dear Sir:

"Your recent application relative to a position in the train service has received favorable consideration. If you are desirous of securing a position either as motorman or conductor, I would be pleased to have a personal interview with you at the office of the Employment Bureau. If you are unable to report immediately, kindly inform this department by letter or telephone at once.

"For your information, would say student trainmen receive 21 cents per hour during their instruction period, which consumes approximately three to four weeks. Thereafter the wages are as follows:

"1st year in service . . . . . . . . . 50 cents per hour.
"2nd year in service . . . . . . . . 53 cents per hour.
"3rd year in service and thereafter . . 55 cents per hour.

"Trainmen while on the extra list are guaranteed a minimum wage of $3.50 per day, provided they report for duty at all times when required to do so.

"The requirements are that applicant have good vision and hearing and no physical infirmities, as it is required from all applicants to pass a thorough physical examination by the company Doctor before being accepted for train service.

"Yours truly,
"Supt. of Employment.

"Kindly present this letter at the Employment Bureau."

The reply further alleges that after he received this communication plaintiff reported to the employment bureau, was examined by defendant's doctor, found fit for work, and accepted as an employe.

The reply admits that defendant paid him, by check, semimonthly wage payments; alleges that the pay rolls were not available for his inspection; that he relied on defendant for the accuracy of the amounts paid him; that, upon discovering that the amounts paid were not the full amounts he was entitled to, he made demand on defendant for the amounts he claims were withheld.

The opening statements of plaintiff's counsel were not taken down by the reporter. What was said can be gathered only from the discussion at the time defendant's counsel moved for a directed verdict, which was taken down and is contained in the settled case. What was then stated consists of numerous questions, answers, and statements by plaintiff's counsel. Summarized, it may be stated as follows: Plaintiff's counsel stated that, as he recalled it, he stated that plaintiff did not discover the discrepancy for some time after the failure to pay the guaranteed minimum—discovered it in June, 1932—and that he continued to work for the company thereafter and gave receipts in full; that he proposed to prove that plaintiff constantly and continuously objected. He then stated:

"So that the record may be clear, your Honor, let the record show that the plaintiff proposes to prove that promptly upon discovery of the violation of the contract by the defendant, and their failure to pay the guaranteed minimum wage of $3.50 a day in accordance with their promise pursuant to which this man was employed, he immediately objected to the paymaster and to the foreman, and continued thereafter upon every occasion to object and to claim and demand from the company his guaranteed minimum wage of $3.50 per day, and that he was advised by the officials of the company, and the agents and employes of this defendant, that he would be paid the shortage and that the question was one of bookkeeping, requiring a checkup of the books and records of the defendant company, and at no time was there any dispute or any denial upon the part of this defendant that the money was not justly due and owing to plaintiff."

■ Plaintiff's counsel admitted that exhibit A was the application signed by the plaintiff. Exhibit A contains no provision or agreement to pay a minimum wage of $3.50 per day. The alleged communication or letter claimed to have been received from defendant, which we hereinafter refer to as exhibit C (hereinbefore quoted), does contain the statement as to the minimum wage of $3.50 per day while trainmen are on the extra list.

This exhibit C, in the record before us, bears no date. It does not appear to be directed to anyone. It bears no signature of any officer or agent of the defendant except the printed words "Supt. of Employment." In his argument plaintiff's counsel said that the letter bears date March 29, 1928, but was not received by plaintiff until April 6, the day before he went to work, and after he had signed and filed with defendant exhibit A. Exhibit C does not purport to be any contract or agreement. It is a request to whoever received it to come to defendant's employment bureau for a personal interview and to present the letter there. There is no showing that the communication was presented or made known to anyone at the employment bureau. It refers to a recent application made by plaintiff. The communication then continues: "For your information, would say," then follows the recital as to hourly wages which trainmen receive and as to the minimum wage while such trainmen are on the extra list.

Exhibit A is a definite agreement that in consideration of being employed by defendant or by its named associates the plaintiff will work for the wage per hour therein stated and will make no charge, claim, or demand for time spent in reporting for duty or while waiting after so reporting before actually beginning work; that wages are to be paid only for such time as plaintiff is actually engaged in operating and running a car for the company, or in actually doing such other work as may be assigned to him by the company, computed at the rate per hour in the agreement stated. The exhibit contains many other provisions, among them a provision that the employment may be terminated at any time by the company, and, inferentially, at least, that plaintiff had the right to resign at any time. There was no term of employment fixed.

Taking the record here presented, consisting of the pleadings and counsel's opening statements as shown, we are unable to find any other contract of employment between these parties than as contained in exhibit A, and all wages earned by plaintiff under that agreement have concededly been paid. We are unable to find that plaintiff's exhibit C was, or ever became, an agreement between the parties, or any addition to or modification of the agreement of hiring contained in exhibit A. The plaintiff having on this record shown no right to recover, judgment was properly directed for defendant.

■ The trial court granted the motion on the authority of the case of Jordan v. G. N. Ry. Co. 80 Minn. 405, 83 N. W. 391. That case held, on the facts there stated, that there was, as a matter of law, an accord and satisfaction of plaintiff's claim for overtime work for defendant, because of a long continued acceptance by plaintiff of monthly checks for his wages and in each instance giving a receipt in full for all compensation due him. There the employment continued for some over four years; in the present case for a little over five years. In that case the plaintiff, after he had worked a little over a year, made a claim for compensation for overtime, and his foreman told him to keep quiet about it and he would see that he was paid for all extra work. Plaintiff then continued to work for a year and ten months, when he was discharged. Thereafter he brought suit to recover compensation for overtime. A directed verdict for defendant was sustained.

We agree with the trial court that there is no material difference between the situation shown in the present case and in the Jordan case. It should be noted, in the first instance, that plaintiff's claim here was a single claim for wages alleged to have been earned by him under a contract of hiring. It was not a liquidated claim in the sense that both parties agreed or ever acknowledged that there was owing to plaintiff the amount he now claims. Defendant at no time so agreed. The case is clearly distinguished from Dormady v. Hose, 188 Minn. 121, 246 N. W. 521, and Dwyer v. Illinois Oil Co. 190 Minn. 616, 252 N. W. 837. In each of those cases there was an express, undisputed, original contract fixing the compensation and

payments by the employer of less than the compensation contracted to be paid.

The question of accord and satisfaction is one regarding which there is much confusion and conflict in the decisions. The old common-law rule that there could be no accord and satisfaction of a debt by the simple payment of a smaller sum than the amount actually due and owing, unless there was a release under seal, or, as otherwise stated, an agreement, not under seal, to accept, or the actual acceptance of, part of a past due, liquidated, and undisputed indebtedness, in discharge of the whole, without other consideration, is not binding on the creditor as a discharge of the amount remaining unpaid. We have long since departed from the rule requiring seals on releases or other simple contracts and documents, and a release not under seal is here as effective as one under seal as required in former times by the common law.

The tendency of recent cases is to give effect to releases given on acceptance of payment even where the payments are not the full amount of the claimed debt.

In Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785, it was held that accepting a check on an unliquidated bill for services of a physician was an accord and satisfaction when the check was sent with a statement that it was in full satisfaction.

Where the claim is unliquidated or, if liquidated, is doubtful in fact or in law, a sum received in satisfaction will legally satisfy the claim. Bull v. Bull, 43 Conn. 455; Tuttle v. Tuttle, 12 Metc. (Mass.) 551, 46 Am. D. 701; Warren v. Skinner, 20 Conn. 559; Pierce v. Pierce, 25 Barb. 243; United States v. Child & Co. 79 U. S. 232, 20 L. ed. 360.

In the note to Melroy v. Kemmerer, 218 Pa. 381, 67 A. 699, 700, 11 L.R.A.(N.S.) 1018, 120 A. S. R. 888, the author calls attention to the growing reluctance of the courts to follow the old common-law rule and to the frequent criticisms thereof. In the case there reported the court said [218 Pa. 383]:

"It was said in Ebert v. Johns, 206 Pa. 395, 55 A. 1064, that the rule that the acceptance of a smaller sum for a debt presently due though agreed and expressed to be payment in full, is not a good

accord and satisfaction, was a deduction of scholastic logic and was always regarded as more logical than just, and hence any circumstance of variation is sufficient to take a case out of the rule."

The case then goes on to enumerate many slight circumstances which will take the case out of the rule, as where the amount of the debt is not certain or where payment is made even one day before it is due.

In C. M. & St. P. Ry. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. ed. 1099, it was held that the general rule applies only where the larger sum claimed is liquidated.

The rule is highly technical and not supported by reason. A slight consideration is therefore sufficient to defeat it. First Nat. Bank v. Shook, 100 Tenn. 436, 45 S. W. 338.

The rule does not apply where anything, whether of advantage to the creditor or disadvantage to the debtor, can reasonably be said to stand for that part of the debt not paid in money. Herman v. Schlesinger, 114 Wis. 382, 90 N. W. 460, 91 A. S. R. 922.

In Rotan Grocery Co. v. Noble, 36 Tex. Civ. App. 226, 81 S. W. 586, the court said the general rule was technical and unjust and should be limited in its application to the precise import thereof; that the least consideration takes a case out of the rule.

The rule has been abolished by statute in six or more states. It is not applied by the courts in Connecticut or Mississippi.

If the rule be held to apply in the present case, we think there was sufficient consideration. Plaintiff was employed for no fixed time, and defendant, under the contract of hiring, had the right to discharge him at any time. His employment was valuable. As indicated by an exhibit in the record, not specially challenged, his earnings paid to him during the first four years were over $1,500 per year. They were less during 1932 and the four months of 1933. He also received small additional sums as bonuses each year. Each time he received a semimonthly payment, except the last payment, he was continued in his employment. This continuance in employment, which the defendant was not obligated to give, is reasonably sufficient to more than compensate plaintiff for the relatively small amount he now claims for so-called minimum wage adjustment.

Where there is one entire claim as, for instance, the amount of wages earned for services for a specified time, and it is admitted by the creditor and debtor that one of two specific sums is the correct amount, but the parties are in dispute as to which amount is correct, the demand is to be regarded as disputed and unliquidated. The dispute is as to the whole amount. So where the parties disagree as to the amount due from one party to the other, under the contract, the claim is unliquidated and the rule of accord and satisfaction applies. Schultz v. Farmers Elev. Co. 174 Iowa, 667, 156 N. W. 716; Addison Miller, Inc. v. American Cent. Ins. Co. 189 Minn. 336, 249 N. W. 795; Woodbery v. New York L. Ins. Co. 223 App. Div. 272, 227 N. Y. S. 699.

By the long continued acceptance of the checks in full payment of the amount due for each semimonthly period of work, the plaintiff here, as in Jordan v. G. N. Ry. Co. 80 Minn. 405, 83 N. W. 391, has settled the claim here presented.

Judgment affirmed.

STONE, JUSTICE (concurring in the result).

Exhibit C was not an offer. It was a mere invitation to negotiate. Plaintiff's application (exhibit A) was the offer, which when accepted by defendant made the whole contract. That is enough to compel decision for defendant. Hence I prefer not to express any opinion on defendant's plea of accord and satisfaction.