DR. LOUIS A. HAUN, Plaintiff in Error, v. J. B. CORKLAND, Defendant in Error.—399 S.W.(2d) 518.

Eastern Section. March 10, 1965.

Certiorari Denied by Supreme Court March 15, 1965.

Nathan Oris Hale, Knoxville, for plaintiff in error.

Clyde W. Key, Knoxville, for defendant in error.

McAMIS, P. J.   Dr. Louis A. Haun brought this action against J. B. Corkland to recover $15,900.00, claimed to be due as unpaid rental on premises at 312 Gay Street in Knoxville, Tennessee, where defendant conducted a mercantile business from some date prior to July 1, 1954, until October 31, 1961, when Dr. Haun sold the property.

The Circuit Judge, sitting without a jury, dismissed the suit and plaintiff has appealed. In the view we take, the case turns on whether, early in the period of the lease, the plaintiff validly agreed to reduce the rent as defendant insists from $600.00 to $400.00 per month (for one year to $300.00 per month).

On July 1, 1954, the parties entered into a written lease for the term running from February 1, 1955, to January 31, 1960. The lease provides a rental of $600.00 per month.

Defendant testified that before the lease was executed he had heard rumors that a large department store directly across Gay Street might move to another location and discussed with plaintiff this possibility and the adverse effect it would have on his business; that the parties "shook hands" and agreed that in that event the amount of rental would be "re-negotiated".

The department store did move shortly thereafter and defendant's volume fell from $118,937.00 in 1954 to $78,-500.00 in 1955 and continued to decline further thereafter until in 1960, the last full year, when it was $68,467.00.

Defendant testified that in March, 1956, plaintiff verbally agreed to reduce the rent to $400.00 per month which he paid and which plaintiff accepted until January, 1958, when he again discussed with plaintiff a reduction and plaintiff agreed to reduce the rent to $300.00, with the understanding that it would go back to $400.00 per month, contingent upon defendant obtaining a loan from the Small Business Administration and that he later got the loan and resumed payment at the rate of $400.00 per month. Defendant testified that during all of this time he kept plaintiff advised of the reduced volume of business he was doing.

Plaintiff denied ever making any agreement to re-negotiate or reduce the rent and explained his acceptance of less than $600.00 per month as being the result of defendant's failure to pay the full amount and his own desire to collect what he could on account. We think the

weight of the evidence, however, is that plaintiff did agree to the reduction.

On March 24, 1958, plaintiff wrote defendant:

"According to my records I have received only seven checks for One Hundred Dollars each this year. *According to our agreement* you were supposed to pay me One Hundred Dollars each week and there has been eleven weeks of this year passed.

"If I am in error please let me know, otherwise I will have to ask you to fulfill *our agreement* and remit the difference in the amount of $400.00." (Italics ours.)

In January, 1959, because of his difficulty in collecting from defendant, plaintiff placed the real estate firm of Wallace and Wallace in charge of collecting the rent.

After a conference with Wallace and Wallace, defendant wrote them as follows:

"As per your request for a letter to confirm our conversations on the arrangements for rent of 312 S. Gay St., it is understood and agreed that the rent will be $100.00 per week, payable to you each Friday.

"My check for $100.00 is herewith."

Defendant made the payments weekly as set forth in the letter and marked the last check payable to Wallace and Wallace "Rent balance in full." At least one other check for $100.00 bears the notation that it was for rent.

As further corroboration of defendant's testimony, it appears without contradiction that plaintiff made no demand for payment of this large sum or any other amount between October, 1961, when the property was sold and the filing of suit on May 29, 1963, a period of more than 18 months.

■■ While the agreement antedating the execution of the lease can not be given the effect of varying the terms of the lease requiring the payment of $600.00 per month, we think defendant's testimony as to the agreement to re-negotiate the rental to be paid in case of the removal of the department store is competent as reflecting upon plaintiff's intention in agreeing to accept $100.00 per week. Under all the proof and circumstances we find that the weight of the evidence is against plaintiff's insistence that there was no intention to release the rental due over and above the payments actually received and accepted.

Plaintiff strongly contends that even if there was an agreement to reduce the rent the agreement was without any new consideration and, for that reason, unenforceable. As supporting this insistence reliance is placed upon Winer v. Williams, 165 Tenn. 190, 54 S.W.(2d) 723.

In that case, the parties, on September 1, 1926, entered into a written lease for a period of 3 years, stipulating that for the first year the rental would be $100.00 per month and $125.00 per month for the second and third years. At the end of the first year the lessee complained that "business was unsatisfactory" and the lessor agreed to accept $100.00 per month for the remainder of the term. Thereafter, rent was paid and accepted on that basis, but after the term expired the lessor sued to recover the additional $25.00 per month for the last two years.

The lessor denied making the agreement and insisted that he did not press for the full amount because of economic conditions. As the opinion clearly shows the alleged agreement was completely in parol without any written evidence to support it. Payments of the reduced

rent were made by checks without showing upon their face what they were for.

The Court in its opinion carefully pointed out that under Shannon's Code Section 5570 (now T.C.A. sec. 24-706) only if the release is in writing can it be given effect in the absence of a consideration. The opinion cites a number of cases holding that under the statute a parol release unsupported by a new consideration is invalid.

The defendant in that case, citing cases from New York and Nebraska holding that a release in parol might be sustained on the theory of a gift, insisted that no consideration was necessary. Referring to the statement taken from the opinion in the New York case that a debt "may be forgiven, and a receipt in full may be evidence of such forgiveness", our Supreme Court said:

"Independently of the question of gift, such a discharge under our statute would relieve the lessee of further liability."

This statement taken in connection with the care with which the opinion points out that the agreement to reduce the rent was completely unsupported by any writing indicates that had there been written evidence of the agreement it would have been sustained even though without consideration.

Since the alleged oral release was invalid under the statute the Court did not consider the effect of the reduction agreement having been fully executed. The opinion refers to 36 C.J. Landlord and Tenant, sec. 1157, pp. 345-346, for the general rule that such reduction agreements unsupported by a consideration are invalid. A revised text of the same authority, 52 C.J.S. Landlord and Tenant sec. 503c, p. 288, after stating the general

rule, adds: "In so far, however, as the agreement has been executed, as to the payments which have fallen due and been paid, and accepted in full as per the agreement, the rule has no application."

In our opinion Winer v. Williams is not to be taken as holding that a fully executed oral agreement to reduce the rent sustained by cancelled checks and other written evidence such as the letter here in evidence is not binding on the lessor unless supported by formal consideration.

■ If such written evidence can be said to amount to a written agreement to reduce the rent, a question of some doubt in this case, under T.C.A. sec. 47-15-103 the writing itself is prima facie evidence of a consideration and the burden falls upon the party seeking to enforce the original terms of the agreements to show a lack of consideration. Douglas v. General Motors Acceptance Corp., 205 Tenn. 432.

Assuming without so holding that the letters passing between the parties and the cancelled checks are only evidence of an oral agreement to reduce the rent and not an agreement in writing we think there was a consideration for the agreement.

■ Enough has been said to show that plaintiff, due to defendant's loss of business and the necessity of his obtaining a loan in order to pay even $400.00 per month, was faced with a choice between allowing defendant to remain in the building at a reduced rental and the possibility of having on his hands an empty building which, in view of the depressed conditions due to the removal of the department store, might be difficult or impossible to rent. Aside from defendant's apparent precarious finan-

cial condition, to bring suit for the full rental would have entailed delay, expense and the vexations of suit. Plaintiff may have preferred "a bird in the hand".

Also to be considered is the change from monthly to weekly payments of the rent and the resulting inconvenience to defendant.

It results that there was a consideration for the agreement. Plaintiff's building remained occupied and he was spared the hazard, expense and inconvenience of suit to enforce the entire debt. A consideration passed from defendant in the form of the inconvenience of meeting the new schedule of payments.

Modern decisions, while showing a reluctance to abandon altogether the rule that partial payment and receipt of a liquidated claim as in full requires a supporting consideration, indicate a growing tendency to criticize the rule and limit its application wherever possible. At least one court of high standing has rejected it altogether. We refer to Rye v. Phillips, 203 Minn. 567, 282 N.W. 459, 119 A.L.R. 1120, where the Court said:

"In Oien v. St. Paul City Ry. Co., 198 Minn. 363, 373, 270 N.W. 1, we made such observations concerning it that the bar should have been advised thereby, that we were ready to label the proposition as a museum piece of the law and shelve it accordingly. As Mr. Dunnell suggests, Minn. Dig (2 Ed.) 1932 Supp. sec. 39, the doctrine may have sprouted from 'a mistake in reporting,' in Pinnel's Case, 5 Co.Rep. 117, in 1602. It is characterized as 'an artificial and groundless rule which has been consistently condemned.' Allen, Law in the Making (Oxford, 1930) 189. Its true status is accurately stated in Selected Readings on the Law of Contracts (MacMillan, 1931) 352, as

follows: 'And the rule is commonly thought to be a corollary of the doctrine of consideration. But this is a total misconception. The rule is older than the doctrine of consideration and is simply the survival of a bit of formal logic of the mediaeval lawyers.' The law has been changed by statute in at least ten of our states. Id. 328. But, being a judge made rule, no vested rights depending on it, judges are just as competent to get rid of it as the legislature.

"There is more than one ground of logic and good law upon which this old and indefensible rule may be discarded. There is no reason why a person should be prevented from making an executed gift of incorporeal as well as corporeal property. Why should a receipt in full for the entire debt not be taken in a proper case as sufficient evidence of an executed gift of the unpaid portion of the debt? Again, where there is proof, or on adequate evidence a finding, that a completed legal act such as a waiver has set a matter at rest, why is it necessary to search for any consideration?"

In the appended annotation there may be found numerous cases criticizing the general rule, at the beginning of which, 119 A.L.R. p. 1125, the editor states:

"But, as above indicated, although the rule is generally recognized, the applications of its exceptions have been more numerous than those of the rule itself, and most courts, while theoretically conceding the rule and its application to cases squarely falling within it, have shown a marked reluctance to extend the rule beyond its literal terms, and have seized upon slight circumstances to take a case out of its operation. As stated by Professor Ames in his article entitled 'Two Theories of Consideration,' in 12 Harvard L. Rev. 515, 525, notwithstanding its

general acceptance, the doctrine has met with almost unparalleled animadversion at the hands of the judges who have applied it.''

As said by the Texas Court of Civil Appeals in National Surety Company v. American Finance Company, 41 S.W.(2d) 66, the Courts which have applied the general rule ''have gone to the verge of reason in finding a consideration for such agreement, and it is now settled that any benefit to the creditor or detriment to the debtor will be considered a sufficient consideration to support the agreement.''

At 17 Am.Jur.2d, p. 121, after stating that the rule has been generally adhered to, the text continues:

''But even in these jurisdictions the courts have frequently criticized the reasonableness and fairness of the rule. Since the rule is not favored, the decisions indicate in a striking manner the extreme ingenuity of the courts in avoiding its operation. They have failed to apply the rule whenever they could discover some circumstance, however trifling, which could be considered as a technical legal consideration. Accordingly, if the creditor accepts part payment in a manner different from that required by the contract or before maturity of the debt, a sufficient new and additional consideration for his promise to discharge the entire debt is deemed to be present. So, partial payment of a debt by a third person is sufficient consideration for a promise. In some jurisdictions the rule as to the payment of undisputed or liquidated demands has, moreover, been entirely repudiated on the ground that the receipt by the creditor of cash, even if less than the amount due, is a real benefit when the fact that he might be put to vexation, expense and delay or the hazard of litigation in an effort to collect the entire

debt is taken into consideration. * * *'' See also 1 Am. Jur.2d 333, 334, 335, Accord and Satisfaction, Section 35.

■ But, if we are mistaken in holding there was a consideration for the agreement to reduce the rent as stated at 52 C.J.S. Landlord and Tenant sec. 503c, p. 288, cited supra, it is generally held where the agreement to reduce the rent has been fully executed and the smaller rent paid and accepted in full during the term of the lease no formal consideration is necessary. 32 Am. Jur. 358; Anno. 43 A.L.R. 1487; 93 A.L.R. 1406; Brackett v. Lofgren, 140 Minn. 52, 167 N.W. 274, L.R.A. 1918F, 998; McKenzie v. Harrison, 120 N.Y. 260, 24 N.E. 458, 8 L.R.A. 257.

In William Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N.W. 650, 93 A.L.R. 1393, due to a general business depression, the tenant was unable to pay the stipulated rent and would have been forced to vacate the premises unless granted a reduction in rent. It was held that an agreement to reduce the rent followed by payment and acceptance of the reduced rent in full satisfaction of the original amount was not invalid for want of consideration.

In all of the cases holding a consideration necessary which have come to our attention the Court has not been concerned with the adequacy of the consideration supporting the agreement to reduce the rent but only whether there could be found something which could be considered a detriment to the lessee or a benefit to the lessor.

■ Although relating to an entirely different field of the law our own cases of DeBord et al. v. Brown, 188 Tenn. 160, 217 S.W.(2d) 772; Williams v. McElhaney,

203 Tenn. 602, 315 S.W.(2d) 106 and Palmer v. Dehn, 29 Tenn.App. 597, 198 S.W.(2d) 827, apply the principle that to constitute a consideration supporting a contract it is not necessary that something concrete or tangible move from one party to the other. Any benefit to one and detriment to the other may be a sufficient consideration.

Affirmed.

Cooper and Parrott, JJ., concur.