Neils Whitney ROBINSON and wife, Alberta Robinson, Plaintiffs-Appellants,

v.

Raymond S. KENNEY and wife, Opal S. Kenney, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

Oct. 1, 1973.

Certiorari Denied by Supreme Court Jan. 21, 1974.

William A. Largen, Dresden, for plaintiffs-appellants.

Harold T. Brundige, Martin, for defendants-appellees.

CARNEY, Presiding Judge.

The plaintiffs below, appellants herein, Dr. and Mrs. N. W. Robinson, brought suit for specific performance to enforce an option to purchase 36 acres of land near the City of Martin, Tennessee. Dr. Robinson is the professor of Animal Science at the College of Agriculture at the University of Tennessee at Martin. He also serves as pastor of the First Christian Church in Martin.

The defendant, Raymond Kenney, is the owner of approximately 350 acres of farm land adjoining the southeast limits of the City of Martin. Mr. and Mrs. Kenney were close personal friends of Dr. and Mrs. Robinson for several years prior to the present litigation. Mr. Kenney has been a school teacher. He holds a master's degree and lacks only a little more work on his doctorate degree. Mrs. Kenney is also a school teacher.

There is very little dispute as to the facts of the case. Mr. Kenney admits that he signed the written option to sell the 36 acres of land to Dr. Robinson but contended that he did not read the written option and did not understand the contents of it and that he, in fact, meant only to give Dr. and Mrs. Robinson the refusal of the land if and when he ever decided to sell it.

His Honor the Chancellor found adversely to the contention of Mr. and Mrs. Kenney that they did not intend to enter into an option contract with Dr. and Mrs. Robinson. However, the Chancellor sustained the position of the defendants that there was no consideration paid for the option and "the same is unenforceable." Dr. and Mrs. Robinson have appealed and assigned error.

We concur in the finding of the Chancellor that the defendants Kenney and wife did understand that they were granting to Dr. and Mrs. Robinson a written

option to purchase the 36 acres of land described in the written option but we find from the preponderance of the evidence that there was a consideration for the execution of the option and that His Honor was in error in refusing to enforce the option. An elaboration of the facts leading up to the execution of the option is in order.

About six years ago when Dr. Robinson came to U. T. at Martin, Dr. and Mrs. Robinson met and formed a close association and friendship with Mr. and Mrs. Kenney. Dr. Robinson owned a home and ten or eleven acres of land adjoining the city limits of Martin but not adjoining the lands of the defendant Kenney. They were separated by about two miles. Dr. Robinson helped Mr. Kenney dehorn and castrate his livestock and in turn, Mr. Kenney loaned Dr. Robinson a tractor to plow his garden and mow his ten or eleven acres of ground. They exchanged work frequently without any money passing between them.

Over a period of four or five years Mr. Kenney often suggested to Dr. Robinson and wife that they sell their home in Martin and build a home on a 50-acre tract of the Kenney land so that they could be closer together. In May or June, 1972, Dr. Robinson began giving serious consideration to the idea of selling his home and ten acres of land and buying the 50 acres from Mr. Kenney and building a home thereon. They agreed at a price of $500.00 per acre or $25,000.00 for the purchase price of the 50 acres of ground. The deal was dependent upon Dr. Robinson being able to find a buyer for his home and ten or eleven acres.

Dr. Robinson told the local real estate agent, Mr. Mickey Moore, to be looking for somebody that might buy his house. Sometime about July 15, 1972, Mr. Moore located a Dr. Muncie, who was coming to U. T. at Martin, and was interested in Dr. Robinson's four-bedroom ten-acre tract of land. Dr. Robinson then communicated with Mr. Kenney about buying the 50 acres of ground and Mr. Kenney was agreeable to financing the purchase price nearly any way Dr. Robinson wished. The new purchaser, Dr. Muncie, would not have his money readily available because he had to sell his house in New Mexico. Dr. Robinson was required to build a new home for occupancy by September 1, 1972, when Dr. Muncie was to get possession of the Robinson home.

As a precautionary measure Dr. Robinson asked Mr. Kenney about buying 14 acres for $7,000.00 and an option for the remaining 36 acres for one year. The defendant Kenney first agreed to this arrangement, then later suggested to Dr. Robinson that if Dr. Robinson should fail to exercise his option, Mr. Kenney would have been damaged to some extent by virtue of Dr. Robinson having taken considerable road frontage in the 14-acre tract that he was purchasing; that the 14 acres on the front was worth more per acre then the back 36 acres. The defendant Kenney suggested that it would be fair for Dr. Robinson to pay him $10,000.00 for the 14 acres of land and get the option on the remaining 36 acres at only $15,000.00 which, if and when he exercised the option, would make the total purchase price $25,-000.00 which the parties had already agreed upon. The reason Dr. Robinson didn't go on and purchase the entire 50 acres at the time was that he was not sure just exactly in what amounts his money was going to come and just how much his new house would cost.

On or about July 18, 1972, Mr. and Mrs. Kenney executed a warranty deed to the 14 acres of ground which recited a consideration of $10,000.00 cash but in reality Dr. and Mrs. Robinson only paid $500.00 down and gave their two notes: one for $4,500.00 due in 60 days and the other for $5,000.00 due in 10 years at 6% interest. However, Dr. and Mrs. Robinson shortly thereafter had to pay the full $10,000.00 to get the 14.2 acres released from trusts on the Kenney land to Federal Land Bank and one of the Martin banks.

The real estate agent, Mr. Mickey Moore, also prepared, contemporaneously with the deed, the written option to the 36-acre tract

of land reciting a purchase price of $15,-000.00 to be paid in cash "or other terms agreed upon at the time option is exercised." The description of the 36 acres was comprised of a description of the 50-acre tract of land with the exclusion of the 14.2 acres sold to Dr. Robinson leaving the remainder of 36 acres more or less. The concluding paragraph of the option is as follows:

"It is understood and agreed that this instrument is intended to create an option contract, binding the parties of the first part to convey said property to the parties of the second part, or to their successors, assigns, or beneficiaries in trust, in the event the party or parties for whose benefit this contract is made shall exercise said option to purchase said land thereof on or before July 17, 1973, said option to expire if not entirely exercised at or before twelve o'clock, noon, of said day, Central Standard Time.

IN WITNESS WHEREOF the said parties of the first part have hereunto set their hand and seal the day and year first above mentioned and written.

/s/ Raymond S. Kenney

RAYMOND S. KENNEY

/s/ Opal S. Kenney

OPAL S. KENNEY"

The option was acknowledged before the real estate agent, Mr. Mickey W. Moore.

Mr. Kenney's statement that he did not know he had signed an option is contradicted, not only by the testimony of Dr. Robinson, but by the testimony of the real estate agent, Mickey Moore, and by one of his neighbors, Mrs. Audrey Fay Evans. Mr. Kenney rents land from Mrs. Evans. Mrs. Evans testified that Mr. Kenney often came by her home and talked to her and that shortly after the deal with Dr. Robinson was consummated, Mr. Kenney told her that they were going to have new neighbors; that he had sold Dr. and Mrs. Robinson a part of the land and that they were going to start a house immediately; that he

had given them an option to buy the rest within a year.

Relations between Dr. and Mrs. Robinson and Mr. and Mrs. Kenney continued good until after Dr. Robinson's home was built and they had moved in. One night shortly after he had moved in, Mr. Kenney came over and told Dr. Robinson that he and his wife had been talking and that they thought that they sold the property too cheap. Dr. Robinson reminded him that he had a written option to purchase the rest of that property and that he expected to complete it. Dr. Robinson testified that Mr. Kenney left his home somewhat upset and relations between the friends steadily worsened. In December, 1972, Dr. Robinson wrote Mr. Kenney a letter notifying him that he expected to exercise his right to purchase the land under the option and that even though he had until July 17, 1973, to exercise the option, in order that Mr. Kenney might make his farming plans for another year, he thought he should purchase immediately. He closed the letter with this statement: "If you have any questions regarding this matter, please contact me at your earliest convenience." Mr. Kenney refused to sell the 36 acres and plaintiffs filed the present suit on January 2, 1973.

Upon the trial the defendant Kenney testified that he did not get the $1.00 consideration recited in the option and that if he had, he would have honored the option. He said that he was still willing to and intended to give Dr. and Mrs. Robinson the refusal of the land if and when he offered it for sale but he had not offered it for sale and did not expect to do so in the foreseeable future.

 The determinative question on appeal before this Court is whether there was consideration for the written option. As a general rule a consideration for a contract may be either a benefit to the promisor or a detriment to or an obligation upon the promisee. *University of Chattanooga v. Stansberry,* 9 Tenn.App. 341. It is not necessary that something concrete and tangible

move from one to the other, and any benefit to one and/or detriment to the other may be a sufficient consideration. *Palmer v. Dehn*, 29 Tenn.App. 597, 198 S.W.2d 827; *Haun v. Corkland*, 55 Tenn.App. 292, 399 S.W.2d 518.

In our opinion there was ample consideration to make the option binding on Mr. Kenney. Dr. Robinson was interested in obtaining a larger farm than the ten or eleven acres which he owned prior to dealing with Mr. Kenney. He wanted about 50 acres of ground so that he could run some cows. Admittedly, Mr. Kenney and wife would have been glad in June, 1972, to sell Dr. Robinson the entire 50 acres of land for $25,000.00 on nearly any terms that Dr. Robinson wanted to make. The entire transaction was a hurryup deal. Dr. Robinson was about to leave for army camp and his wife was to supervise the building of the new home.

■ Dr. Robinson was somewhat cautious about over-extending his credit so he decided that he would prefer to buy only a portion of the ground that he knew he could pay for along with the home which he was building and the cost of which he did not know the exact amount and to take an option on the remainder to make sure that he would be able to get it if and when his financial situation permitted him to do so. We think it is clear from this record that Dr. Robinson would not have entertained the idea of buying the 14 acres unless an option to purchase the additional 36 acres was a part of the contract. Therefore, we hold that the execution of the written option to purchase was a part of and inseparable from the contract to sell the 14 acres of land to Dr. Robinson. The $10,000.00 paid by Dr. Robinson, along with the sale of his own home and ten acres to his detriment, was the consideration both for the 14 acres of land and for the execution of the written option.

Dr. Robinson had no incentive whatsoever to move from his comfortable four-bedroom home with ten or eleven acres partly inside the city limits of Martin out into the country some two miles away and to build a new home and just get three or four additional acres of land. The incentive for him to sell his home and ten or eleven acres of ground was to obtain a larger tract of 50 acres of land so he could run some cows. He relied upon Mr. Kenney's written signed option to his detriment.

■ The right to specific performance in any particular case is governed by the ordinary principles of equity. *Moss Tie Co. v. Hill*, 191 Tenn. 582, 235 S.W.2d 587.

■ Where the award of damages is practicable and would be adequate, the court, as a rule, will not compel specific performance but will leave the complainant to his remedies at law or will itself award damages. *Gilson v. Gillia*, 45 Tenn.App. 193, 321 S.W.2d 855.

■ In the case at bar it is not practicable to determine the amount of damages to which plaintiffs would be entitled nor do we think it feasible to compensate adequately Dr. and Mrs. Robinson with an award of damages without imposing a harsh and oppressive penalty upon Mr. and Mrs. Kenney. The 36 acres of land are probably worth more to Dr. and Mrs. Robinson than to Mr. and Mrs. Kenney. We find the written option signed by Mr. and Mrs. Kenney to be fair and equitable, free from fraud and mistake, based upon a valid consideration, capable of being enforced without hardship to either party and specific performance should be enforced. The fact that Mr. and Mrs. Kenney have changed their minds or can get more money for the land is not just reason to deny specific performance. *Saunders v. Davis*, 31 Tenn. App. 674, 220 S.W.2d 883.

Therefore, the decree of the lower Court must be reversed. A decree will be entered in this Court adjudging the plaintiffs to be entitled to specific performance of the option to purchase the 36 acres in accordance with the terms of the written contract. The cause will be remanded for the enforce-

ment of said decree. The costs in the Court below and in this Court are taxed to the appellees, Mr. and Mrs. Kenney.

MATHERNE and NEARN, JJ., concur.